GOLOTRADE SHIPPING AND CHAR-
TERING, INC. and Intercontinental
Affiliates, Plaintiffs,

v.

The TRAVELERS INDEMNITY CO.
and the Travelers Insurance Co.,
Defendants.

No. 87 Civ. 4356 (KC).

United States District Court,
S.D. New York.

Feb. 1, 1989.

2. *See* Document Nos. 7, 9, and 52 in the official    court file.

Thomas J. Fleming, Olshan, Grundman & Frome, New York City, for plaintiffs.

David Heller, Raymond Lawlor, Lawlor & Caulfield, New York City, for defendants.

## AMENDED MEMORANDUM OPINION AND ORDER

CONBOY, District Judge:

This action arises out of a comprehensive general liability insurance policy issued by the Travelers Indemnity Co. and the Travelers Insurance Co. (collectively "Travelers") to the plaintiff Intercontinental Affiliates, predecessor in interest of M. Golodetz Co. Golotrade Shipping and Chartering Inc. is a wholly owned affiliate of Intercontinental. (Plaintiffs will hereinafter be referred to collectively as "Golotrade".) Golotrade, along with various police officers and FBI agents, was sued in March of 1984 in the Eastern District of Pennsylvania under 42 U.S.C. § 1981 and § 1983 for alleged civil rights violations during the search in Philadelphia of Anthony Chokas' warehouse, and Mr. Chokas' subsequent arrest. A multitude of pendant state actions such as false arrest, false imprisonment, malicious prosecution, abuse of process, trespass, intentional interference with present contractual relations, intentional interference with prospective advantageous business relations, conversion, conspiracy, and advantageous business relations, conversion, conspiracy, and intentional infliction of emotional distress were also alleged. The *Chokas* action, in which compensatory and punitive damages were sought, arose after Chokas was acquitted of criminal charges of larceny and receiving stolen property (Golotrade's property). These criminal charges, in turn, arose out of Golotrade's investigation of the criminal conduct of one of its employees. The investigation led to Mr. Chokas' warehouse, where the employee had purportedly stored the "stolen" property.

Golotrade gave Travelers timely notice of the *Chokas* action and requested that Travelers defend it. Golotrade believed that the *Chokas* action fell under the policy's coverage for "personal injury" actions.[1] *See* Plaintiff's Memorandum of Law at 4–5. Travelers, in turn, designated the firm of Dougherty & Stonelake to defend the suit. Subsequently, in August of 1984, Travelers notified Golotrade for the first time that it was disclaiming coverage for punitive damages. *See* Nagel Affidavit ¶ 10 and Ex. C. In this same letter and without revealing its basis for so doing, Travelers also "reserved" its right to disclaim liability with respect to the claims alleged, seemingly disclaiming any obligation to pay certain awards of compensatory damages. Then, in April of 1985, Travelers disclaimed any liability for any malicious, intentional or conspiratorial acts, even if only compensatory damages were awarded. *See* Nagel Affidavit ¶ 10 and Ex. D. This disclaimer was made apparently pursuant to the policy exclusion of personal injury actions arising out of willful violations of a penal statute or ordinance.[2] *See* Nagel Affidavit, Ex. A at 45.

Prior to the institution of the *Chokas* action, Golotrade retained the firm of Roe & Kramer as general counsel in New York. Golotrade dealt specifically with Barbara Nagel, Esq., an associate there. It was Ms. Nagel who forwarded the complaint to Travelers and requested that the insurer defend Golotrade. After the first disclaimer by Travelers, Ms. Nagel learned from the Dougherty firm that the compensatory damages presented an exposure of $50,000, while the punitive damage exposure might well reach $1,000,000. *See* Nagel Affidavit ¶ 11. Ms. Nagel became concerned about Travelers' first disclaimer and retained the Philadelphia firm of Mattioni, Mattioni, & Mattioni to represent Golotrade in the *Chokas* action, since all of the claims asked for punitive damages. She believed this disclaimer of liability for many of the intentional and malicious torts alleged by Chokas created an irreconcilable conflict of interest between Golotrade and Travelers. In its second disclaimer letter, Travelers even suggested that Golotrade might want to have additional counsel represent them. Accordingly, Golotrade asked that Travelers pay for the additional independent counsel it retained due to the conflict of interest. Travelers refused.

At the close of discovery, Dougherty & Stonelake were prepared to recommend a settlement of $150,000 to Travelers, while Mr. Chokas was demanding approximately $750,000. *See* Nagel Affidavit ¶ 11. The action was favorably settled for $40,000 in December of 1986 after the active participation of outside counsel for almost two years. *See* Mattioni Affidavit ¶ 13. In fact, Golotrade's claim that it was the Mattioni firm that uncovered the key piece of evidence leading to the favorable settlement well below the Dougherty estimate is essentially undisputed. Golotrade's share of the liability was $22,500 and it was paid in its entirety by Travelers. *See* Dougherty Affidavit ¶ 7.

In the action filed with this Court, Golotrade seeks reimbursement of the over $71,000 in fees it incurred in its defense

---

1. The Policy provided:

    II. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY COVERAGE

    (A) The Company will pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the Named Insured's business, within the policy territory, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such Injury, even if any of the allegations of the suit are groundless, false or fraudulent....

    The policy defined personal injury as injury arising out of one or more of the following offenses committed during the policy period:

    (1) false arrest, detention, imprisonment, or malicious prosecution;

    (2) wrongful entry or eviction or other invasion of the right of private occupancy ...

    Nagel Affidavit, Ex. A at 45.

2. The policy provided that:

    (B) This insurance does not apply:

    .   .   .   .   .

    (2) to personal injury or advertising injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge of the Insured....

due to the need to hire independent counsel. The motion currently before the Court is Golotrade's motion for summary judgment on the liability of Travelers for the fees paid. Travelers has cross moved for summary judgment in its favor.

## DISCUSSION

Fed.R.Civ.P. 56(c) allows summary judgment to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Although the movant is not required to submit affidavits in support of the motion, *see* Rule 56(a) and (b), if it does so, the non-moving party may not rest upon the mere allegations or denials of the non-moving party's pleadings but the non-moving party's response, by affidavits or as otherwise provided by the rule, must set forth specific facts showing that there is a genuine issue for trial. Fed.R. Civ.P. 56(e). Rule 56(e) also provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show that the affiant is competent to testify to the matters stated therein." If the non-moving party does not respond in the manner dictated by the rule, summary judgment, if appropriate, shall be entered against it.

■ The moving party bears the initial burden of establishing that no genuine dispute as to material facts exists. *See Addickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Golotrade has carried that burden as shown by the affidavit of Barbara Nagel, sworn to December 23, 1987, and the exhibits appurtenant thereto. Thus, the burden shifts to Travelers, the opposing party, to show that a genuine issue of fact exists. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574,

585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Unsupported assertions in an affidavit sworn to by an opposing party's attorney who lacks personal knowledge of the facts do not create genuine issues of material fact that require a denial of summary judgment. *See United States v. Potamkin Cadillac Corp.*, 689 F.2d 379, 381 (1982); *First City Fed. Sav. Bank v. Bhogaonker*, 684 F.Supp. 793, 798 (S.D.N.Y. 1988). At first, Travelers submitted only the affirmation of David S. Heller, Esq., (undated but filed with this Court on February 5, 1988) in opposition to the motion. Mr. Heller's affirmation is not made upon personal knowledge as he was not the attorney involved in the *Chokas* action in Pennsylvania. Apparently, after plaintiff Golotrade's counsel pointed out that there were mistakes and misleading assertions in the affirmation, Mr. Heller submitted a supplemental affirmation (also undated but filed February 26, 1988). At this same time, an affidavit of John Dougherty, Esq., was also filed by Travelers. The Dougherty affidavit, although it does not so state, is based on personal knowledge. Thus, since the Dougherty affidavit is the only affidavit submitted in accordance with Rule 56 by Travelers, it will be the only affidavit considered by this Court to determine whether a genuine issue of fact exists.[3]

The Court must first look to the substantive law governing the case to determine which facts are material. Only disputes over material facts will preclude the entry of summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Once this Court determines what facts are material, it must then determine whether there is a genuine issue as to a material fact. *See id.* Travelers contends that the law of the state of Pennsylvania governs. Golotrade, on the other hand, contends that New York law is the applicable law.

■ As this is a diversity action, this Court, sitting in New York, must apply New York law including New York's

---

**3.** Mr. Heller also submitted an affirmation in Reply, filed with this Court on March 25, 1988. This affirmation, like his others, is not based on personal knowledge, and therefore will not be considered on this motion. The exhibits appurtenant to these affirmations, however, will be considered to the extent they contain evidence which is properly admissible.

choice-of-law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie R. Co v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Traditionally, in cases involving interpretation of an insurance policy, New York applied *lex loci contractus* or the "place of contracting rule."[4] However, the more modern approach is to apply the law of the jurisdiction which has the most significant contacts with the matter in dispute. *See McGinniss v. Employers Reinsurance Corp.*, 648 F.Supp. 1263, 1267 (S.D.N.Y.1986) (applying New York's rule as set out in *Auten v. Auten*, 308 N.Y. 155, 124 N.E.2d 99 (1954)). The insurance policy at the center of the instant action was issued through a New York insurance broker and delivered in New York. The named insured, Intercontinental Affiliates, is a New York limited partnership with its principal place of business in New York. Golotrade Shipping and Chartering Inc., an affiliated corporation and also a plaintiff in this action, is a New York corporation with its principal place of business here as well. The premiums were paid from New York. *See* Plaintiffs' Reply Memorandum at 3.

Although the underlying claims against the plaintiffs arose and were litigated in Pennsylvania, the main legal issues in the case at bar concern the rights and obligations of the parties to an insurance contract and whether there was a breach by the insurer of its obligations. In light of the fact that plaintiffs are both New York entities, and substantial aspects of contract formation and performance accrued in New York, New York has significant contacts with the matter in dispute, and a superior interest in the litigation than Pennsylvania. Accordingly, this Court will apply New York law.[5]

Under New York law, it is well-settled that "[w]here an insurance policy includes the insurer's promise to defend the insured against specific claims as well as to indemnify for actual liability, the insurer's duty to furnish a defense is broader than its obligation to indemnify." *Seaboard Surety Co. v. Gillette Co.*, 64 N.Y.2d 304, 310–11, 486 N.Y.S.2d 873, 875–76, 476 N.E. 2d 272, 274–75 (1984); *see Servidone Constr. Co. v. Security Ins. Co. of Hartford*, 64 N.Y.2d 419, 423–24, 488 N.Y.S.2d 139, 142, 477 N.E.2d 441 (1985); *International Paper Co. v. Continental Cas. Co.*, 35 N.Y.2d 322, 326, 361 N.Y.S.2d 873, 876, 320 N.E.2d 619, 621 (1974); *see also Beckwith Mach. Co. v. Travelers Indemnity Co.*, 638 F.Supp. 1179, 1186 (W.D.Pa.1986) (applying Pennsylvania law) appeal dismissed, 815 F.2d 286 (1987). The duty to defend is not contingent on the insurer's ultimate duty to indemnify and it extends to any action alleging a claim which is potentially covered by the policy, regardless of whether excluded claims are also alleged. *See Seaboard*, 64 N.Y.2d at 310–11, 486 N.Y.S.2d at 875–76, 476 N.E.2d at 274–75; *Utica Mut. Ins. Co. v. Cherry*, 38 N.Y.2d 735, 735, 381 N.Y.S.2d 40, 40, 343 N.E.2d 758, 758 (1973); *see also National Grange Mut. Ins. Co. v. Continental Casualty Ins. Co.*, 650 F.Supp. 1404, 1408 (S.D. N.Y.1986) ("Even if some of the obligations of the underlying complaint are clearly outside the scope of the coverage contained in the policy, the insurer is obligated to defend unless the allegations as a whole preclude coverage.") (footnote omitted). Thus, Travelers' position, as reflected throughout its papers, that it was not obligated to defend plaintiffs on the non-covered claims, but did so anyway is clearly contrary to law. Unquestionably, Travelers was obliged to furnish a defense to the plaintiffs on the non-covered claims as

---

**4.** The Court rejects the defendants' contention that the doctrine of *lex loci delectus* or "law of the place of the wrong rule" be applied. *See* Defendants' Memorandum of Law at 2. One prominent commentator states that "[t]he fact that an accident which is within the risk covered by an accident policy occurred in a certain state does not make the contract one of that state." Couch on Insurance 2d [Rev. Ed.1984] § 16:13. Furthermore, because the instant action is a breach of contract action, the doctrine is inapposite.

**5.** Were this Court to apply Pennsylvania law to the instant case, the outcome would not be different. Attention is directed to the Court's discussion below for specific citations to Pennsylvania caselaw.

there were claims alleged which clearly fell within the policy. *See Avondale Industries, Inc. v. Travelers Indemnity Co.*, 123 F.R.D. 80, 82–83 (S.D.N.Y. 1988); *Seaboard*, 64 N.Y.2d at 310–11, 486 N.Y.S. 2d at 875–76, 476 N.E.2d at 274–75; *Cherry*, 38 N.Y.2d at 735, 381 N.Y.S.2d at 40, 343 N.E.2d at 758; *see also St. Paul Fire & Marine Insurance Co. v. Roach Bros. Co.*, 639 F.Supp. 134, 139 (E.D.Pa.1986) (applying Pennsylvania law); *Beckwith*, 638 F.Supp. at 1186 (same).

■ It is also well-established that when the insurer and the insured have a potential conflict of interest, the duty to defend includes a duty to provide independent defense counsel to the insured, whose reasonable fee is to be paid by the insurer but who is to be appointed by the insured. *See Public Service Mutual Insurance Co. v. Goldfarb*, 53 N.Y.2d 392, 401–02, 442 N.Y. S.2d 422, 427, 425 N.E.2d 810, 815 (1981); *Hartford Accident and Indemnity Co. v. Village of Hempstead*, 48 N.Y.2d 218, 228–29, 422 N.Y.S.2d 47, 54, 397 N.E.2d 737, 744 (1979); *Prashker v. United States Guarantee Co.*, 1 N.Y.2d 584, 593, 154 N.Y.S.2d 910, 917, 136 N.E.2d 871, 876 (1956); *Baron v. Home Insurance Co.*, 112 A.D.2d 391, 393, 492 N.Y.S.2d 50, 52 (2d Dep't 1985).[6] It is important to recognize that independent counsel is not necessary in all cases where multiple claims are made. It is only necessary where the "question of insurance coverage is … intertwined with the question of the insured's liability." *Goldfarb*, 53 N.Y.2d at 401–02, 442 N.Y.S.2d at 427, 425 N.E.2d at 815. Such a case arises when "the defense attorney's duty to the insured would require that he defeat liability on any ground

and his duty to the insurer would require that he defeat liability only upon grounds which would render the insurer liable." *Id.*

Plaintiffs contend that Travelers' August 22, 1984 disclaimer of coverage for punitive damages, *see* Nagel Affidavit Ex. D, created a conflict of interest for the defense firm, Dougherty & Stonelake, designated by Travelers to defend the *Chokas* action instituted in federal court in Philadelphia. Because of this conflict, the argument follows, plaintiffs were entitled to retain independent counsel, and Travelers was obligated to pay the reasonable fees of such counsel. In light of the first disclaimer, Plaintiffs' general counsel in New York, Roe & Kramer, retained the Mattioni firm in Philadelphia in January of 1985 to defend Golotrade "only insofar as it has been alleged these defendants may be liable to plaintiffs for punitive damages." Because all of the counts in the *Chokas* action requested punitive damages, Mattioni defended all claims. (Mattioni Affidavit at 2). Plaintiffs further contend that another conflict of interest arose when in April of 1985 Travelers disclaimed coverage for damages predicated on intentional acts, malice or conspiracy. (Nagel Affidavit Ex. D). Due to these coverage disclaimers, plaintiffs felt that they were entitled under *Goldfarb* to independent counsel paid for by Travelers. They believed that since the disclaimers might have directly and impermissibly affected the defense strategy, such that Travelers' interest was to defeat liability only on the grounds covered by the policy, and that their own interest was to defeat liability on any ground, and especially the grounds that were not covered. It should be pointed out once again that, by Dough-

---

**6.** Assuming *arguendo* that Pennsylvania law should be applied, the seminal case in that jurisdiction on an insurer's conflict of interest is *Bituminous Insurance Companies v. Pennsylvania Manufacturers' Association Insurance Co.*, 427 F.Supp. 539 (E.D.Pa.1976). There, the court concluded that the conflicting defense strategies dictated by the insurer's disclaimer required the insurer to provide independent defense counsel to both its insured, a subcontractor, and to the insured's co-defendant, the general contractor, whom the insurer also had a duty to defend. *Id.* at 555–56. *Bituminous* is cited for the proposition that "[a]ll potential conflicts of interest

must be assiduously avoided." *Oliver B. Cannon & Son, Inc. v. Fidelity & Casualty Co.*, 484 F.Supp. 1375, 1385 (D.Del.1980) (applying Pennsylvania law). Indeed, in a recent case, the District Court for the Eastern District of Pennsylvania, sitting in diversity, recognized that an "appropriate resolution [to the conflict of interest problem] is for the insurer to obtain separate, independent counsel for each of its insureds, or to pay the costs incurred by an insured in hiring counsel." *Consolidated Rail Corp. v. Hartford Accident and Indemnity Co.*, 676 F.Supp. 82, 86 (E.D.Pa.1987).

erty's estimate, plaintiffs were faced with potential liability of over $1 million in punitive damages, which, in fact, were not covered by the policy, and approximately $50,000 in compensatory damages which may or may not have been covered. *See* June 16, 1986 Letter of John Dougherty, Heller Affidavit, Ex. 1.

While the issue of whether there actually was or potentially could have been a conflict appears to be a fact in issue in this case, in reality, the evidence presented on this question indicates that this is not a *genuine* issue which prevents plaintiffs' motion from being granted. Travelers never disputes that it disclaimed coverage. Its position is that no conflict of interest was shown by plaintiffs despite the disclaimers because the *Chokas* action was successfully settled by Travelers' designated counsel within the policy coverage. This position ignores the period of time between the disclaimers and the settlement, from August of 1984 through December of 1986, when plaintiffs were preparing the action for trial. During that time period, it is clear that a conflict of interest existed between insurer and insured; the insured concluded that designated defense counsel might not try to defeat liability on the non-covered grounds and might concentrate only on the covered grounds. Indeed, in Travelers' second disclaimer letter, it suggested that Golotrade might want to retain additional counsel to represent them on the uninsured claims. This letter indicates that Travelers, too, knew of the potential conflict of interest and recognized that Golotrade, understandably, would be uncomfortable being represented only by Travelers' designated counsel.

Travelers now suggests that because its designated counsel, Mr. Dougherty, stated in a letter dated June 18, 1986 that it was his belief that all of the counts in the *Chokas* litigation were covered by the Travelers policy (Dougherty Affidavit at ¶ 4, Heller Affirmation Ex. 1), there was no conflict. (Travelers' Memorandum of Law in Opposition at 1 & 5). However, the conflict of interest between the insurer and the insured never ceased to exist as Travelers never retracted its disclaimer of cover-

age. Even if, in the light most favorable to the non-movant, we assume that designated counsel may have been defending all counts, it was still designated counsel acting under the control of Travelers and not independent counsel as necessitated under *Goldfarb.*

Travelers also advances the argument that even if there was a conflict, plaintiffs' counsel, Ms. Nagel, in a letter to Travelers dated Sept. 29, 1986, "admitted" that the conflict no longer existed. *See* Travelers' Reply Memorandum of Law at 2. This Court does not see how a reasonable jury could construe Ms. Nagel's letter by a preponderance of the evidence to be an admission that no conflict existed. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). The language cited by defendants as the admission was purely conditional on other language which the defendants have conveniently disregarded. Further, this supposed admission was just one month before the case was settled and after much work had already been done by outside counsel. Thus, even if it could, however illogically, be construed as an admission that a conflict no longer existed as of that date, there was still a conflict for the period of August of 1984 to the date of the letter. Plaintiffs would still be entitled to compensation for the services of its independent counsel by Travelers during this time period.

Travelers further exhorts, without any citation to case law, that Golotrade is guilty of laches because plaintiffs never requested reimbursement of their independent counsels' fees until after the *Chokas* action was settled. *See* Travelers' Memorandum of Law at 16. This claim is completely unfounded. In the first place, this is an action at law for damages, therefore, the equitable defense of laches does not apply. *See Grant Airmass Corp. v. Gaymar Industries, Inc.,* 645 F.Supp. 1507, 1515 (S.D.N.Y.1986). Additionally, Travelers waived the right to the defense even if it was entitled to it because it failed to plead it as an affirmative defense in its answer. *See Satchell v. Dilworth,* 745

F.2d 781, 784 (2d Cir.1984). Finally, the evidence submitted shows that from at least March 6, 1985, Golotrade informed Travelers that it intended to hold the insurer responsible for the independent counsels' fees and fee statements were submitted to the insurer for that purpose. *See* Nagel Reply Affidavit ¶ 6 & Ex. F.

■ Travelers, also in its laches argument, urges the Court that the plaintiffs were obligated to commence a declaratory judgment action against the insurer that a conflict of interest existed before the resolution of the *Chokas* action. The caselaw cited by Travelers does not support this proposition. *See Luria Bros. & Co. v. Alliance Assurance Co., Ltd.,* 780 F.2d 1082, 1091–92 (2d Cir.1986); *Ruder & Finn Inc. v. Seaboard Surety Co.,* 52 N.Y.2d 663, 667–668, 439 N.Y.S.2d 858, 860–61, 422 N.E.2d 518, 520–21 (1981); *see also Consolidated Rail Corp. v. Hartford Accident and Indemnity Co.,* 676 F.Supp. 82, 86 (E.D.Pa.1987) (applying Pennsylvania law).

In conclusion, this Court holds that there is no genuine issue of material fact and therefore, that plaintiffs' motion for summary judgment is granted in full. Defendants' cross-motion is denied. As regards the plaintiffs' motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, this Court finds that imposition of sanctions may be appropriate. *See Smith v. United Steel Workers of America, Local 2693,* No. Civ–87–37E, 1988 WL 15544, (W.D.N.Y. February 25, 1988) (where baseless action defended by means of an affidavit containing materially false statements, Rule 11 sanctions should be imposed). Mr. Heller admits that his first affirmation filed February 5, 1988 was misleading as to whether defense counsel actually participated in the defense of the *Chokas* action. *See* Heller Supplemental Affirmation ¶ 3, filed February 25, 1988. None of Mr. Heller's affirmations, nor the memoranda of law prepared by his firm, appear to have been based on the "reasonable inquiry" of the facts that Rule 11 requires. For example, Mr. Heller insisted that the plaintiffs never asked Travelers to pay their attorneys' fees until the suit was set-tled. *See, e.g.,* Defendants Memorandum of Law at 2, 10, 16. The evidence submitted by the plaintiffs clearly shows otherwise. Therefore, the parties are hereby directed to appear at a hearing before this Court on Friday, March 10, 1989, at 10:00 a.m., at which time it will be determined whether sanctions should in fact be imposed.

SO ORDERED.