VAN HOLLENBECK v INSURANCE COMPANY OF NORTH
AMERICA

Docket No. 85615. Submitted November 18, 1986 at Detroit. Decided
February 2, 1987. Leave to appeal applied for.

Van-Mar Enterprises, a partnership consisting of plaintiff Homer
J. Van Hollenbeck and Douglas Martinez, entered into a con-
tract with Select Markets, Inc., whereby Van-Mar was granted
exclusive rights to distribute football plaques manufactured by
Select Markets. Pursuant to this agreement, Van-Mar issued
purchase orders to Select Markets for 13,000 plaques. Select
Markets applied for a $6,000 loan from the First National Bank
of Mt. Clemens. Van Hollenbeck personally endorsed the note
and guaranteed payment of the loan. Subsequently, Van Hol-
lenbeck discovered that somebody else was marketing plaques
that appeared to be identical with those which were the subject
of the distribution agreement. This led to a disagreement with
Select Markets and Van-Mar and Select Markets entered into
an agreement to dissolve their business relationship and to free
each other from obligations remaining under the distribution
agreement. Later, an unrelated lawsuit was filed against Select
Markets and Michelle Abbruzzese. The plaintiffs in that lawsuit
alleged breach of contract and fraud against Select Markets
and sought as partial relief a preliminary injunction and the
prejudgment attachment of all of Select Markets' production.
In support of this relief, Van Hollenbeck executed an affidavit
as a representative of Van-Mar, in which he outlined the
business dealings between Select Markets and Van-Mar. The
court allowed the prejudgment attachment. Although the at-
tachment was later dismissed, Select Markets was unable to
overcome the financial hardship sustained as an alleged result
of its temporary inability to distribute its products. Select
Markets and Ms. Abbruzzese commenced an action against Van

REFERENCES

Am Jur 2d, Insurance §§ 269 et seq.; 1405 et seq.; 1422 et seq.

Allegations in third person's action against insured as determining
liability insurer's duty to defend. 50 ALR2d 458.

Consequences of liability insurer's refusal to assume defense of
action against insured upon ground that claim upon which action
is based is not within coverage of policy. 49 ALR2d 694.

Hollenbeck, Martinez and others, alleging conspiracy to commit malicious prosecution and abuse of process. The complaint charged that Van Hollenbeck executed the affidavit pursuant to a conspiracy to destroy Select Markets, whereafter Van Hollenbeck and Martinez would become successors to the license possessed by Select Markets to distribute the plaques. Insurance Company of North America, Van Hollenbeck's insurer, refused to defend. A judgment on a jury verdict against all the defendants in the underlying action was entered. Van Hollenbeck subsequently entered into a settlement with Abbruzzese and the assignees of Select Markets. Van Hollenbeck agreed to pay a sum and also assigned to Select Markets and Abbruzzese a portion of the proceeds from the insurance policy issued by INA. Van Hollenbeck and others brought an action in the Macomb Circuit Court against INA seeking a declaratory judgment that INA breached its contract of insurance with Van Hollenbeck by refusing to extend coverage under the policy and by failing to assume the defense in the underlying action. The circuit court, Raymond R. Cashen, J., ruled that the policy did not afford liability coverage but that INA nonetheless breached its duty to defend Van Hollenbeck. Plaintiffs appealed and defendant cross-appealed.

The Court of Appeals *held:*

The trial court correctly determined that INA had a duty to defend but erred in finding that the policy did not provide coverage.

1. The policy provided for indemnification of the insured for damages he was legally obligated to pay as a result of liability for "personal injury" or property damage. The policy defined personal injury to include liability for malicious prosecution. However, the lower court found that the policy's "business" exclusion precluded coverage. The business exclusion, fairly read, is ambiguous. Ambiguous language in an insurance contract is construed against the insurer. Ambiguous language in exclusionary clauses in insurance policies is to be strictly construed against the insurer. The exclusion, construed narrowly, does not negate coverage.

2. An exclusion excluding from coverage liability for acts or omissions of the insured as an officer or director of a corporation or other organization did not apply to exclude coverage.

3. Two options are available to an insurer where it is asked to defend an action brought against the insured and it questions its duty to defend: 1) it can undertake the defense, with notice to the insured that it is reserving the right to challenge its liability on the policy; or 2) it can repudiate liability and

refuse to defend and take its chances that there will be a showing that there is no coverage for the insured's liability. Defendant chose the second alternative and, as there was coverage, had a duty to defend.

Affirmed in part, reversed in part and remanded.

1. INSURANCE — AMBIGUITY — EXCLUSIONARY CLAUSES — JUDICIAL CONSTRUCTION.

Ambiguous language in an insurance contract is construed against the insurer; ambiguous language in exclusionary clauses in insurance policies is to be strictly construed against the insurer.

2. INSURANCE — AMBIGUITY — JUDICIAL CONSTRUCTION.

A contract of insurance is ambiguous and should be construed against its drafter if a fair reading of the entire contract leads to the understanding that there is coverage under particular circumstances and another fair reading of it is that there is no coverage under the same circumstances; a contract of insurance, however inartfully worded or clumsily arranged, which fairly admits of but one interpretation may not be said to be ambiguous.

3. INSURANCE — DUTY TO DEFEND — DUTY TO PROVIDE COVERAGE.

The duty of an insurer to defend its insured is dependent upon the allegations in the complaint filed by a third party against the insured; the duty to defend and the duty to provide coverage are not synonymous; the duty to defend extends to those cases where the allegations in a complaint filed against the insured even arguably come within the policy coverage; any doubts as to whether or not a complaint against an insured alleges a duty of the insurer to defend under the policy should be resolved in the insured's favor.

4. INSURANCE — DUTY TO DEFEND — INSURER'S OPTIONS.

Two options are available to an insurer where it is asked to defend an action brought against the insured and it questions its duty to defend: 1) it can undertake the defense, with notice to the insured that it is reserving the right to challenge its liability on the policy; or 2) it can repudiate liability and refuse to defend and take its chances that there will be a showing that there is no coverage for the insured's liability.

*Weinstein, Kroll, Gordon, Hoffman & Shulman, P.C.* (by *William J. Weinstein* and *Joel L. Hoffman*), and *O'Reilly, Rancilio, Nitz, Andrews &*

*Turnbull, P.C.* (by *Kenneth L. Rancilio* and *Bert R. Ross*), for plaintiffs.

*Martin, Bacon & Martin, P.C.* (by *James N. Martin* and *Kevin L. Moffatt*), for defendant.

Before: SHEPHERD, P.J., and WAHLS and SULLIVAN, JJ.

SULLIVAN, J. This case involves the cross-appeals from an order of declaratory judgment and supporting opinion entered by the Macomb Circuit Court. The court found that a personal catastrophe insurance policy issued by defendant, Insurance Company of North America (INA), did not afford liability coverage to plaintiff Homer J. Van Hollenbeck in a lawsuit filed against him by Select Markets, Inc., and its major shareholder, Michelle Abbruzzese, but that INA did owe Van Hollenbeck a duty to defend. Plaintiffs appeal as of right concerning the issue of INA's liability under the policy, and defendant INA cross-appeals as of right, primarily on the issue of its duty to defend.

This dispute arose out of the business dealings of Select Markets. In June, 1973, Van-Mar Enterprises, a partnership consisting of Van Hollenbeck and a Douglas Martinez, entered into a contract with Select Markets, whereby Van-Mar was granted exclusive rights to distribute collegiate football plaques manufactured by Select Markets. Pursuant to this agreement, Van-Mar issued two purchase orders to Select Markets for 10,000 plaques and for 3,000 plaques respectively.

As Select Markets apparently lacked sufficient capital to produce the plaques, it applied for a $6,000 loan from the First National Bank of Mt. Clemens. To further the objectives of the distribution agreement, Van Hollenbeck personally en-

dorsed the note and guaranteed payment of the loan.

Subsequently, Van Hollenbeck discovered that somebody else was marketing plaques that appeared to be identical to those which were subject to the distribution agreement. This led to a disagreement with Select Markets and, on July 16, 1973, Van-Mar and Select Markets entered into an agreement to dissolve their business relationship and to free each other from obligations remaining under the distribution agreement.

In November, 1973, an unrelated lawsuit was filed in Macomb Circuit Court against Select Markets and Michelle Abbruzzese and was captioned as *Joy Pattern, et al v Select Markets, et al,* Docket No. X-73-6170. The plaintiffs in that lawsuit alleged breach of contract and fraud against Select Market and sought as partial relief a preliminary injunction and the prejudgment attachment of all of Select Markets' production. In support of this relief, Van Hollenbeck executed an affidavit as a representative of Van-Mar, in which he outlined the business dealings between Select Markets and Van-Mar, described the loan which he personally guaranteed, and also stated as follows:

> [T]he affiant, Homer J. Van Hollenbeck, is justly apprehensive that the indebtedness to the First National Bank of Mt. Clemens of which he is the principal guarantor, will remain unsatisfied due to the failure of Select Markets Inc to pay said note.

The affidavit was signed by Van Hollenbeck individually.

Subsequent to the issuance of this affidavit, the *Joy Pattern* plaintiffs were granted the injunction and the prejudgment attachment, and Select Mar-

kets was consequently unable to sell its products during the Christmas season. Although the attachment was dismissed in February, 1974, Select Markets was unable to overcome the financial hardship sustained as an alleged result of its inability to distribute its products. The company was eventually voluntarily dissolved by its shareholders. The *Joy Pattern* action was ultimately dismissed on April 15, 1974, and an amended order for dismissal was entered on October 7, 1974.

Thereafter, Select Markets and Ms. Abbruzzese commenced the underlying action against Van Hollenbeck, Martinez and others, alleging conspiracy to commit malicious prosecution and abuse of process. The complaint charged that Van Hollenbeck executed the affidavit in the *Joy Pattern* litigation pursuant to a conspiracy to destroy Select Markets, whereafter Van Hollenbeck and Martinez would become successors to the license possessed by Select Markets to distribute National Football League plaques. A jury verdict against all the defendants in the underlying action was entered on February 1, 1982, in the amount of $3,500,000. Van Hollenbeck subsequently entered into a settlement with Abbruzzese and the assignees of Select Markets. Van Hollenbeck agreed to pay $900,000, and also assigned to Select Markets and Abbruzzese a portion of the proceeds from the insurance policy issued by INA.

Due to INA's refusal to defend Van Hollenbeck in the underlying action, Van Hollenbeck filed the instant action in October, 1981. (Later, in July, 1983, an amended complaint was filed joining the remaining plaintiffs.) Plaintiffs sought a declaratory judgment that INA breached its contract of insurance with Van Hollenbeck by refusing to extend coverage under the policy and by failing to assume the defense in the underlying action. In its

judgment, the circuit court ruled, as stated, that the policy did not afford liability coverage but that INA nonetheless breached its duty to Van Hollenbeck to defend.

I

The first issue is whether the lower court erred in finding that the policy did not provide coverage to Van Hollenbeck under the circumstances of this case. We agree with the plaintiffs that the lower court's decision was error mandating reversal.

It is undisputed that the policy provided for indemnification of the insured for damages he was legally obligated to pay as a result of liability for "personal injury" or property damage. The policy defined personal injury to include liability for malicious prosecution. However, the lower court found that the policy's "business" exclusion precluded coverage. As worded in the insurance contract, this exclusion reads as follows:

> EXCLUSIONS:
> 1. This Section shall not apply, as respects Coverage A.
>
> * * *
>
> H. to any BUSINESS OR BUSINESS PROPERTY (other than farms) of an INSURED except to the extent that insurance therefor is provided by an underlying policy listed in Schedule A hereof, provided, this exclusion shall not apply to the use of private passenger automobiles for business purposes other than as public or livery conveyance.

Business is further defined in the policy to include "trade, profession, or occupation." The trial court in essence interpreted exclusion (H) as a "business pursuit" exclusion and denied coverage on that basis.

In reversing this part of the judgment, we are mindful that an ambiguity in an insurance contract is construed against the insurer and that exclusionary clauses in insurance policies are to be strictly construed against the insurer. *Benike v Scarborough Ins Trust,* 150 Mich App 710, 715; 389 NW2d 156 (1986). In *Raska v Farm Bureau Mutual Ins Co of Michigan,* 412 Mich 355, 361-362; 314 NW2d 440 (1982), our Supreme Court articulated the following test to determine whether a provision in an insurance contract is ambiguous:

> Any clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy.
>
> * * *
>
> A contract is said to be ambiguous when its words may reasonably be understood in different ways.
>
> If a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand there is no coverage under the same circumstances the contract is ambiguous and should be construed against its drafter and in favor or coverage.
>
> Yet if a contract, however inartfully worded or clumsily arranged, fairly admits of but one interpretation it may not be said to be ambiguous or, indeed, fatally unclear.

Giving the instant insurance policy a fair reading, we can only conclude that the "business" exclusion, quoted above, is ambiguous. As stated, business was defined in the policy as including a trade, profession or occupation. Plaintiffs reasonably contend that the exclusion is inapplicable because the underlying suit did not involve a lawsuit against Van Hollenbeck's business or re-

lating to any of his business property. Rather, plaintiffs point out that Van Hollenbeck was sued in his individual capacity and for an act committed in such a capacity.

On the other hand, the circuit court interpreted the clause, in essence, as a "business pursuit" exclusion. This exclusion is standard in insurance policies, and is generally set forth in policies as follows: "business pursuits of any insured except (i) activities therein which are ordinarily incident to nonbusiness pursuits." See, e.g., *Randolph v Ackerson,* 108 Mich App 746; 310 NW2d 865 (1981), lv den 413 Mich 896 (1982). The term is generally defined as an activity that is profit motivated and that contains some degree of continuity. 108 Mich App 748. This Court has construed the applicability of this exclusion to a variety of factual circumstances, as was described recently in *Frankenmuth Mutual Ins Co v Kompus,* 135 Mich App 667, 674-676; 354 NW2d 303 (1984), lv den 421 Mich 863 (1985).

Given the common usage of this exclusion, as well as this jurisdiction's policy to strictly construe ambiguous exclusions against the insurer which drafted the policy, we believe it would be inappropriate to read the word "pursuits" into the instant "business" exclusion. Although we acknowledge the reasonableness of the trial court's interpretation of the exclusion as encompassing any activity engaged in for profit, trade, or occupation, we likewise observe that the interpretation offered by plaintiffs is just as reasonable. The ambiguity in the clause should not inure to the benefit of the insurer who drafted the policy. If INA wanted to specifically exclude the "business pursuits" of its insured, it was perfectly capable of doing so. Consequently, construing the "business" exclusion nar-

rowly, we are unpersuaded that it applied to negate coverage in the underlying suit.

In its cross-appeal, INA argues that the circuit court erred by finding exclusion (J) of the policy inapplicable to the instant facts. Exclusion (J) excludes from coverage liability arising from "any act or omission of the INSURED as an officer or a member of the board of directors of any corporation or other organization . . . ." INA maintains that this exclusion encompasses activities by a partner while acting on behalf of the partnership. Strictly construing this clause, we disagree. In drafting the policy, INA made an obvious distinction between partners of a partnership and officers or directors of a corporation or other similar organization. If INA desired to expand exclusion (J) to embrace partnership activities, it could have done so by drafting the exclusion in such an explicit manner.

Again, we find that the ambiguous language of exclusion (H) of the policy warranted a strict construction against INA. The trial court erroneously interpreted that exclusion as applying to defeat coverage in the instant case. That part of the declaratory judgment is therefore vacated and this case shall be remanded to the trial court for reentry of a judgment in favor of plaintiffs on the issue of coverage.

II

We also address INA's argument on cross-appeal that the trial court erred in finding a duty on the part of INA to defend the underlying suit against its insured, Van Hollenbeck.

The duty to defend is not synonymous with the duty to provide coverage. The duty to defend arises from the language of the insurance contract,

*Stockdale v Jamison,* 416 Mich 217, 224; 330 NW2d 389 (1982), is dependent upon the allegations in the complaint filed by the third party against the insured and extends to those cases where the allegations against the insured even arguably come within policy coverage. *Illinois Employers Ins of Wausau v Dragovich,* 139 Mich App 502, 506; 362 NW2d 767 (1984). Any doubt as to the extent of coverage is to be resolved in the insured's favor. *Id.*

Two options are available to an insurer which is asked to defend an action brought against the insured:

> It can undertake the defense with notice to the insured that it is reserving the right to challenge its liability on the policy. The second alternative for the insurer is to repudiate liability, refuse to defend and take its chances that there will be a showing that there is no coverage for the insured's liability. [*The Detroit Edison Co v Michigan Mutual Ins Co,* 102 Mich App 136, 145; 301 NW2d 832 (1980). See also *St Paul Ins Co v Bischoff,* 150 Mich App 609, 613; 389 NW2d 443 (1986).]

Here, INA, having undertaken a contractual obligation to defend whenever coverage is afforded under the policy, chose the second alternative and is now obligated. Due to our finding that the policy afforded coverage to Van Hollenbeck, INA was required to provide a defense. That part of the lower court judgment so providing is affirmed.

Reversed in part and remanded for further proceedings not inconsistent with this opinion.