907 F.2d 151
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
LUNTZ CORPORATION, Plaintiff-Appellant,
v.
TRANSPORTATION INSURANCE COMPANY, Defendant-Appellee.
 No. 89-2050.
 United States Court of Appeals, Sixth Circuit.
 June 29, 1990.
 
 Before MERRITT, Chief Circuit Judge, and KRUPANSKY and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Luntz Corporation appeals the district court's grant of summary judgment for Transportation Insurance Company in this action seeking recovery under an insurance policy. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 In 1983, the Chrysler Corporation invited bids on the sale of scrap metal generated at its stamping plant in Sterling Heights, Michigan. Luntz Corporation successfully bid to purchase the scrap metal, and it entered into a series of contracts with Chrysler. After contracting with Chrysler, Luntz entered into another series of contracts to sell the same scrap to Carter Industrial, Inc. The Luntz-Carter contracts provided that Carter would pick up the scrap metal directly from the Chrysler plant, have the scrap weighed, and send the weight tickets to Luntz for calculation of the amount owed to Chrysler.
 
 
 3
 During 1983 and 1984, Chrysler, Luntz and Carter executed several sales agreements for scrap steel. Carter removed the bundled scrap from the Chrysler plant in double tandem trailers, and it obtained separate weight tickets for each trailer. However, Carter submitted to Luntz the weight ticket for only one trailer. Therefore, each time Carter picked up a load of scrap metal, it paid Luntz for the contents of only one trailer. Consequently, Luntz paid Chrysler for only half of the scrap metal removed from the plant. At some point during 1984, Chrysler learned that Carter was not submitting all the weight tickets.
 
 
 4
 In March 1986 Chrysler filed an action against Luntz in federal district court to recover the value of the scrap metal which Carter removed without reporting to Luntz. In Count I, Chrysler alleged that Luntz breached the sales contract by failing to pay for all the scrap removed from the plant. Count II of Chrysler's complaint alleged that Luntz acted negligently in supervising the removal and weighing of the bundled scrap steel. Chrysler sought recovery in the amount of $884,795.26.
 
 
 5
 Luntz notified its insurance carrier, Transportation Insurance Company, of the Chrysler lawsuit, and Luntz submitted a claim under both the all risk property and the comprehensive general liability provisions of its policy. Transportation denied Luntz' claims and refused to defend Luntz in the Chrysler lawsuit. Luntz ultimately settled with Chrysler by paying $160,000.
 
 B.
 
 6
 On April 18, 1988, Luntz filed the present action against Transportation alleging diversity jurisdiction pursuant to 28 U.S.C. Sec. 1332. Luntz sought recovery under a policy issued by Transportation for the period from October 1, 1983, to October 1, 1985. In Count I, Luntz alleged that the property and the liability provisions of the policy covered the losses it suffered in the Chrysler-Carter transactions. In Count II, Luntz alleged that Transportation breached its duty to defend Luntz in the Chrysler litigation. In Count III, Luntz alleged that Transportation breached its duty to indemnify Luntz for losses incurred in 474 incidents of theft by Carter. Transportation admitted the existence of the insurance policy, but it denied the other allegations in Luntz' complaint, and it raised several affirmative defenses.
 
 
 7
 The parties engaged in discovery, and pursuant to an order of the district court, they stipulated to a statement of relevant facts and documents. The parties filed cross-motions for summary judgment, and following a hearing on July 5, 1989, the district court granted Transportation's motion for summary judgment and dismissed the action. On August 7, 1989, the court denied Luntz' motion for reconsideration and issued a memorandum opinion which essentially repeated the oral opinion rendered at the conclusion of the July 5, 1989, hearing.
 
 
 8
 The district court held that Luntz did not suffer a loss or damage to its property because the underweighed scrap was not its property. The court concluded that title to the scrap transferred from Chrysler through Luntz to Carter instantly upon Carter's picking up the scrap metal. Therefore, the scrap was Carter's property when it was underweighed. The court also ruled that the policy did not cover financial loss suffered by Luntz due to fraudulent representations by Carter.
 
 
 9
 This timely appeal followed. The principal issue on appeal is whether the district court erred by granting summary judgment for Transportation.
 
 II.
 A.
 
 10
 Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We review a grant of summary judgment de novo, Pinney Dock and Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 109 S.Ct. 196 (1988), viewing all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987). "An appellate court can find an alternative basis for concluding that a party is entitled to summary judgment and ignore any erroneous basis relied upon by the district court, provided it proceeds carefully so the opposing party is not denied an opportunity to respond to the new theory." Herm v. Stafford, 663 F.2d 669, 684 (6th Cir.1981). Because the parties have stipulated to the facts and the documents in this case, one of them is entitled to a judgment as a matter of law. Eberhard Foods, Inc. v. Handy, 868 F.2d 890, 891 (6th Cir.1989).
 
 B.
 
 11
 Luntz argues that Carter's removal of scrap steel for which it did not submit a weight ticket is properly characterized as theft of Luntz' property, and, therefore, it is a "direct physical loss" covered under the all risk property portion of the policy. Luntz asserts that the district court incorrectly focused on whether Luntz had title to the scrap steel at the time of the loss, rather than on whether it had an insurable interest in the scrap. Luntz contends that under Michigan law an insurable interest in property is not dependent upon having ownership or title to the property. See Crossman v. American Ins. Co., 198 Mich. 304, 164 N.W. 428 (1917). Therefore, Luntz maintains that the district court erred by ruling that since title had transferred to Carter at the time of the loss, Luntz did not have coverage under the all risk portion of the policy.
 
 
 12
 The district court discussed policy coverage in terms of property ownership. The court used Mich.Comp.Laws Sec. 440.2401 to determine ownership of the scrap and, hence, policy coverage. The court concluded that under section 440.2401, title to the scrap passed to Carter upon Carter's picking up the scrap from the Chrysler plant because Chrysler and Luntz, the sellers, completed physical delivery of the goods by accumulating the bundled scrap on the dock at the Chrysler plant. Thus, Carter acquired title to the scrap upon its being picked up, and its failure to report the full weight of the scrap simply means that it underpaid Luntz for what it purchased.
 
 
 13
 Luntz correctly argues that ownership or title to property is not a prerequisite for having an insurable interest in property. Therefore, it is irrelevant whether Luntz retained title to the scrap metal after Carter picked it up from the Chrysler plant. However, simply having an insurable interest in property does not establish that the property is covered by an insurance policy. The relevant inquiry in this case is whether the scrap metal is property covered by the policy. Because the parties have stipulated to the facts and the relevant documents, the coverage issue is a question of law which we may resolve on appeal.
 
 
 14
 Our analysis begins with examination of the relevant policy provisions. The all risk property portion of the policy "insures against all direct physical loss to the property covered in this Coverage Part." The "property covered" includes "contents," as defined in paragraph A of the all risk property form. The policy defines "contents" as property "at the described location(s) or within 100 feet thereof if in the open." Paragraph F.5 of the all risk property form extends coverage off premises to "property in and in transit anywhere within and between [the] Continental United States of America and Canada...." This extension of coverage is limited to $10,000 per occurrence for property while in transit and all other property off the premises.
 
 
 15
 The preceding provisions raise some preliminary questions as to policy coverage. For example, it is questionable whether the scrap metal comes within the definition of "contents." The policy does not identify the "described location(s)," as that term is used to define "contents." However, because Luntz' office is located in Canton, Ohio, it is very doubtful that the Chrysler plant in Sterling Heights, Michigan, is the "described location." Moreover, since the scrap metal was picked up by Carter at the Chrysler plant, it is unlikely that the scrap came within 100 feet of the "described location(s)." On the other hand, the scrap metal does seem to fall within the extension of coverage as property in transit within the United States, subject to the $10,000 per occurrence limitation.
 
 
 16
 A second preliminary coverage issue is whether Carter's conduct caused "direct physical loss to the property." Luntz characterizes Carter's conduct as theft, but there is no policy provision which specifically covers loss of property due to theft. The policy does exclude from coverage theft of property "from a building in process of construction," and we could infer from this narrow exclusion that all other theft is covered by the policy. However, it is unnecessary for us to decide these preliminary coverage issues. For purposes of this appeal, we presume coverage initially and turn our attention to policy exclusions.
 
 
 17
 Paragraph E.16 excludes from coverage "loss caused by, resulting from, contributed to or aggravated by ... Insured's voluntary parting with title or possession of any property if induced to do so by any fraudulent scheme, trick, device or false pretense." This exclusion is applicable to the present claim. Luntz voluntarily parted with possession of the scrap metal when Carter picked up the scrap at the Chrysler plant. Luntz' parting with possession of the scrap was voluntary because Luntz agreed to the shipment terms in its contracts with Carter. Carter's conduct in removing the scrap in tandem trailers without reporting the weight of both trailers may certainly be described as a "fraudulent scheme, trick, device or false pretense."
 
 
 18
 Whether Luntz was induced to part with possession of the scrap by Carter's fraudulent scheme presents a closer question. Carter's fraudulent scheme included submitting a weight ticket for only one trailer, and this occurred after Luntz parted with possession of the scrap. However, the scheme was certainly devised and carried out prior to Luntz' parting with possession, as evidenced by the fact that Carter picked up the scrap in tandem trailers which could be weighed separately. Thus, we conclude that Luntz was induced to part with possession of the scrap by Carter's fraudulent scheme, and, therefore, the loss is excluded from coverage.
 
 C.
 
 19
 Luntz next argues that the district court failed to separately consider and rule on its claims under the liability portion of the policy. Luntz asserts that this case should be remanded for the district court to address its claim for indemnification and its claim that Transportation breached its duty to defend. Nevertheless, Luntz does discuss the merits of its claims under the liability portion of the policy. Luntz contends that Carter's theft of the scrap steel was an "occurrence," as defined in the policy, which caused property damage. Luntz also asserts that Transportation breached its duty to defend the Chrysler lawsuit, and it argues that it is entitled to reimbursement from Transportation for the amount paid to settle the Chrysler lawsuit.
 
 
 20
 A review of the oral and memorandum opinions issued by the district court reveals that the court did not explicitly address Luntz' claims under the comprehensive general liability portion of the policy. Although the district court did mention Luntz' claim for indemnification and Transportation's refusal to defend the Chrysler lawsuit, the court did not discuss the merits of these claims. Federal Rule of Civil Procedure 52(a) "provides that findings of fact and conclusions of law are unnecessary when the district court grants or denies a motion for summary judgment." Poe v. Haydon, 853 F.2d 418, 426 (6th Cir.1988), cert. denied, 109 S.Ct. 788 (1989). Therefore, the district court's failure to specifically discuss Luntz' claims under the comprehensive general liability portion of the policy does not preclude our reviewing the grant of summary judgment, particularly since the parties have stipulated to the relevant facts and documents.
 
 
 21
 Our analysis begins with examination of the relevant provisions of the comprehensive general liability policy. The policy obligates Transportation to pay on behalf of Luntz "all sums which [Luntz] shall become legally obligated to pay as damages because of ... Property Damage to which this insurance applies, caused by an Occurrence." (Emphasis in original.) The policy definition of "property damage" applicable to this claim is "loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an Occurrence during the policy period." (Emphasis in original.) Thus, Transportation's obligation to indemnify Luntz requires "Property Damage" caused by an "Occurrence." However, we need not decide whether underpayment for the scrap comes within the definition of "Property Damage" because we conclude that even if Chrysler suffered property damage, it was not caused by an "Occurrence."
 
 
 22
 An "occurrence" is defined as "an accident ... which results in ... Property Damage neither expected nor intended from the standpoint of the Insured." (Emphasis in original.) Chrysler's loss of use of the scrap was caused by Carter's fraudulent scheme of not reporting the full weight of the scrap removed. This was purposeful conduct on the part of Carter, not an "accident." An accident is defined as "an undersigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." Allstate Ins. Co. v. Freeman, 432 Mich. 656, 670, 443 N.W.2d 734, 741 (1989). While Carter's scheme of not reporting the full weight of the scrap may have been neither expected nor intended from Luntz' standpoint, to describe Carter's purposeful conduct as an "accident" goes beyond the common usage of the term. Therefore, we conclude that Carter's removal and underpayment for the scrap did not cause property damage for which this liability policy provides coverage.
 
 
 23
 Our conclusion that there is no liability coverage does not entirely resolve this appeal because "[t]he duty to defend is not synonymous with the duty to provide coverage." Van Hollenbeck v. Insurance Co. of N. Am., 157 Mich.App. 470, ---- 403 N.W.2d 166, 170 (1987). Under Michigan law,
 
 
 24
 [t]he duty to defend arises from the language of the insurance contract, is dependent upon the allegations in the complaint filed by the third party against the insured and extends to those cases where the allegations against the insured even arguably come within policy coverage.
 
 
 25
 Id. (citations omitted.) And, "it is necessary to focus on the basis for the injury and not the nomenclature of the underlying claim in order to determine whether coverage exists." Freeman, 432 Mich. at 662, 443 N.W.2d at 737. "Any doubt as to the extent of coverage is to be resolved in the insured's favor." Van Hollenbeck, 157 Mich.App. at ----, 403 N.W.2d at 170.
 
 
 26
 In the present case, the policy language imposes on Transportation a "duty to defend any suit against the Insured seeking damages on account of such Bodily Injury or Property Damage, even if any of the allegations of the suit are groundless, false or fraudulent." (Emphasis in original.) Chrysler's complaint alleged in Count I that Luntz did not pay for all of the scrap removed from Chrysler's plant. Count II of the complaint alleged that Luntz failed to perform its duties under its contract with Chrysler because Luntz acted negligently in selecting Carter and in failing to supervise Carter's removal and weighing of the scrap.
 
 
 27
 The key inquiry is whether Chrysler's allegations against Luntz "even arguably come within policy coverage." Van Hollenbeck, 157 Mich.App. at ----, 403 N.W.2d at 170. Chrysler's complaint does not allege bodily injury or property damage, and even looking beyond the nomenclature of the claim to the basis for the injury, the allegations of the complaint do not arguably come within the policy coverage. The basis for Chrysler's injury was underpayment for the scrap removed. Luntz' alleged negligent conduct did not cause property damage to Chrysler. Luntz' alleged negligence caused it to breach the sales contract by not paying for all the scrap that was removed. Because Chrysler sought recovery under a contract and not recovery for property damage, Transportation had no duty to defend Luntz. Consequently, Transportation is not obligated to reimburse Luntz for the amount of its settlement with Chrysler.
 
 III.
 
 28
 Accordingly, for the foregoing reasons, the district court's grant of summary judgment for Transportation is AFFIRMED.