PUBLISH

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 14 1999**

**PATRICK FISHER**
**Clerk**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

DOME CORPORATION, an Oklahoma
Corporation; NEODYNE DRILLING
CORPORATION, an Oklahoma
Corporation; THOMAS G. WATSON, as
an individual and as a Director and
Officer of Dome Oil Corporation and
Neodyne Drilling Corporation - Dome Oil
Corporation; THOMAS C. JOHNS, an
individual,

      Plaintiffs,

v.

COMPTON K. KENNARD, as an
individual and as an Officer and as
Director of South Florida Pump Service,
Inc., a Florida Corporation - South Florida
Pump Service, Inc.,

      Defendant,

  and

GARY HERMANN, an individual,

      Defendant-Appellant,

No. 98-5001

v.

THE CINCINNATI INSURANCE
COMPANY, an Ohio Insurance
Company; AUTO-OWNERS
INSURANCE COMPANY,

    Third-Party-Defendants-
    Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 96-CV-97-E)

---

G. Steven Stidham (Brian S. Gaskill and Brian T. Inbody with him on the briefs) of Sneed Lang, P.C., Tulsa, Oklahoma, for Defendant-Appellant.

Stephen C. Wilkerson (Harry A. Parrish on the brief) of Knight, Wilkerson, Parrish, Wassall & Warman, Tulsa, Oklahoma, for Third-Party-Defendant-Appellee The Cincinnati Insurance Company.

William S. Leach of Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, Oklahoma, for Third-Party-Defendant-Appellee Auto-Owners Insurance Company.

---

Before **BALDOCK**, **MCKAY**, and **BRORBY**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

    This case is the product of an oil and gas deal gone bad. In 1993, Gary Hermann,[1]

---

[1] While this appeal was pending, Gary Hermann died. The personal representative of Hermann's estate filed an unopposed motion to be substituted as the Appellant in this case. We grant the personal representative's motion and, for the sake of clarity, refer to the personal representative and Mr. Hermann collectively as Hermann.

2

the owner and operator of a Florida hardware store, purchased a working interest in several oil and gas wells operated by Plaintiffs Dome Corporation and Neodyne Drilling. In 1995, Hermann became unhappy with Plaintiffs' handling of the venture. As a result, Hermann contacted a number of Plaintiffs' other investors and discussed the possibility of investigating Plaintiffs' operation of the wells. Hermann then hired Compton K. Kennard, a person with expertise in the oil and gas business, to evaluate Plaintiffs' operation of the venture.

Kennard investigated Plaintiffs' operations and prepared a written report detailing deficiencies he perceived in Plaintiffs' manner of operation. The report was mailed to other investors participating in the venture. As a result, Hermann and the other investors filed suit seeking to oust Plaintiffs as operators of the wells. Plaintiffs defaulted and the investors replaced them with another operator. Plaintiffs then filed the instant diversity suit in the district court contending that the report and other statements made by Hermann constituted libel and slander. Hermann sought coverage under four separate insurance policies: (1) a homeowners' policy issued by Auto-Owners Insurance Company (Auto-Owners); (2) a personal liability umbrella policy issued by The Cincinnati Insurance Company (Cincinnati); (3) a business owners' policy issued by Cincinnati; and (4) a commercial umbrella policy issued by Cincinnati. The insurance companies denied coverage.

Cincinnati filed a third-party complaint seeking a declaration that it had no duty to

3

defend or indemnify Hermann. Cincinnati further sought a determination of whether the homeowners' policy provided by Auto-Owners provided coverage. Consequently, Auto-Owners entered the fray seeking a determination of coverage.

On cross-motions for summary judgment, the district court held that, under the four insurance policies in question, the insurance companies had no duty to defend and indemnify Hermann. On appeal, Hermann argues this determination was in error. Our jurisdiction arises under 28 U.S.C. § 1291. Reviewing the district court's grant of summary judgment de novo, we reverse and remand.

## I. Coverage Under Homeowners' Policy

An insurance policy is a contract between the insurer and insured. Royce v. Citizens Ins. Co., 557 N.W.2d 144, 146 (Mich. App. 1996).[2] When called upon to construe an insurance contract, a court must read the contract as a whole and give meaning to all the terms contained within the policy. Id. at 147. The policy language should be construed according to its plain meaning "so that technical and strained constructions are avoided." Id. "A policy is ambiguous when, after reading the entire document, its language can be reasonably understood in different ways." Id. If the court determines the policy is ambiguous, it must construe the policy in favor of coverage. Id. Where the language clearly and unambiguously excludes coverage, however, the court

---

[2] The district court found that Michigan law governed the interpretation of the homeowners' policy. The parties do not dispute this finding on appeal. Accordingly, we analyze the homeowners' policy under Michigan law.

4

must enforce the terms of the agreement. Id.

At dispute in this case is the following language in the homeowners' policy issued by Auto-Owners:

Under the Personal Liability Coverage we do not cover:

***

5. personal injury
   a. in connection with any business, occupation, trade or profession; or
   b. with respect to any publication or utterance made knowing it to be false.

The policy clarifies the term business as follows:

"**Business**" means:
   a. any full or part time trade, profession or occupation; and
   b. rental or holding for rental of any premises by an insured person.
But "**Business**" does not mean:
   1. occasional rental or holding for rental of the residence premises for use as a dwelling;
   2. rental or holding for rental of part of the residence premises for use as a dwelling, unless the rental is to three or more roomers or boarders in any single family unit; or
   3. rental or holding for rental of part of the residence premises as a private garage, office, school, or studio.

The issue before us is whether the alleged injuries resulting from Hermann's participation in the instant oil and gas venture unambiguously fall within the above quoted "Business" exclusion to the Auto-Owners policy.

"Business" and "Business Pursuits" exclusions are standard clauses in many insurance policies. See Van Hollenbeck v. Ins. Co. of North America, 403 N.W.2d 166, 169 (Mich. App. 1986). In Van Hollenbeck, the Michigan Court of Appeals examined

5

these exclusions when an insured sought coverage under his homeowners' policy after a former business associate sued him individually for conspiracy to commit malicious prosecution and abuse of process. The policy contained an exclusion under which the company refused to cover injuries caused in relation to "business or business property." The policy defined business as "trade, profession, or occupation." The trial court found that the insured's activities fell within the "business" exclusion. In doing so, the trial court treated the exclusion as a "business pursuits" exclusion, which under Michigan law, excludes injuries resulting from activity "that is profit motivated and that contains some degree of continuity." Id. at 169.

On appeal, the insured contended that the exclusion was ambiguous. Relying on the fact that he was sued in his individual capacity, the insured argued that the exclusion did not apply because the underlying suit related only to him as an individual. Examining both the trial court and Van Hollenbeck's constructions of the statute, the Michigan Court of Appeals determined that either construction was reasonable. Implicitly recognizing that no coverage would exist under a "business pursuits" exclusion, the court refused to construe the policy's "business" exclusion as such. In doing so, the court stated:

> Given the common usage of [the business pursuits] exclusion, as well as
> this jurisdiction's policy to strictly construe ambiguous exclusions against
> the insurer which drafted the policy, we believe it would be inappropriate to
> read the word "pursuits" into the instant "business" exclusion. Although we
> acknowledge the reasonableness of the trial court's interpretation of the
> [instant] exclusion as encompassing any activity engaged in for profit,
> trade, or occupation, we likewise observe that the interpretation offered by
> plaintiffs is just as reasonable. The ambiguity in the clause should not inure

6

to the benefit of the insurer who drafted the policy. If INA wanted to specifically exclude the business pursuits of its insured, it was perfectly capable of doing so. Consequently, construing the business exclusion narrowly, we are unpersuaded that it applied to negate coverage in the underlying suit.

Id. at 169-70.

This case presents a problem similar to the one addressed in Van Hollenbeck. The Auto-Owners policy excludes coverage for injuries occurring "in connection with any business, occupation, trade or profession." The policy defines "business" as any "full or part time trade, profession or occupation." Auto-Owners reasonably argues that Hermann's participation in the oil and gas venture falls within this language because the venture was continuous and profit motivated. Hermann, on the other hand, contends that by defining "business" as a "trade, profession or occupation," Auto-Owners limited the exclusion to injuries occurring in connection with the insured's primary or principal calling. The words trade, profession and occupation are commonly defined as a person's principal or primary business. E.g., Webster's Third New International Dictionary 1560, 1811, 2421 (1981). The record in this case demonstrates that Hermann invested in oil and gas ventures only as a sideline and that his principal business was hardware sales. Thus, Hermann's interpretation is reasonable as well. Where policy language is susceptible to more than one reasonable construction, it is ambiguous and must be construed in favor of coverage. Royce, 557 N.W.2d at 147.

Auto-Owners argues that a finding of coverage would effectively read the word

"any" out of and insert the phrase "the insured's principal" into the policy language. If true, such a result is the product of the company's own creation. Instead of using a "business pursuits" exclusion, which has been broadly construed under Michigan law to exclude a wide array of profit motivated activities, see e.g., State Mutual Ins. Co. v. Russell, 462 N.W.2d 785, 788 (Mich. App. 1990), Auto-Owners chose to use narrower language excluding injuries in connection with any "business, occupation, trade or profession." The company further defined business as a "full or part time trade, profession or occupation." After choosing to narrowly define "business," Auto-Owners may not now complain about the ambiguity which arises when its narrow definition is read in conjunction with the expansive term "any."

Auto-Owners further argues that the language is unambiguous because of the phrase "in connection with." Citing Wiley v. Travelers Ins. Co., 534 P.2d 1293 (Okla. 1974), Auto-Owners contends that the use of the term "in connection with" negates "any meaning as to the sole or principal trade occupation or trade." We disagree.

Under the facts of this case, the phrase "any business, occupation, trade or profession" may reasonably be interpreted as either including or excluding the activity giving rise to Hermann's claim. The words "in connection with" do little to clear up the meaning of trade, occupation or profession. Indeed, although no Michigan court has squarely addressed the issue, at least one court has found ambiguity in a policy containing nearly identical language. See North Carolina Farm Bureau Mutual Ins. Co. v. Briley,

8

491 S.E.2d 656, 658-660 (N.C. App. 1997) (determining that language excluding coverage for injuries "arising out of or in connection with" an insured's business activities was subject to more than one reasonable interpretation and was, therefore, ambiguous). The present language is subject to more than one reasonable interpretation. Where two reasonable interpretations exist, the policy must be construed in favor of coverage. Royce, 557 N.W.2d at 147-48.

In sum, Auto-Owners essentially asks us to construe the "business" exclusion in this case as a "business pursuits" exclusion. We decline to do so. Michigan law clearly distinguished between "business" and "business pursuits" exclusions at the time Auto-Owners issued the disputed policy. See Van Hollenbeck, 403 N.W.2d at 169-70. In fact, Auto-Owners chose to use the "business pursuits" language in the portion of the policy covering property damage and bodily injury. Arguably, Auto-Owners believed that the breadth of the "business pursuits" exclusion would impact its ability to market its homeowners' policies if the company included such a clause in the portion of the policy covering personal injury. Regardless of its reasons for doing so, Auto-Owners chose not to use the established "business pursuits" language in the personal injury section of the policy. In doing so, it created an ambiguity which, under Michigan law, must be construed in favor of the insured. Accordingly, we reverse the district court's determination and remand for further proceedings.

II. Coverage Under the Personal Umbrella Policy

9

In addition to Auto-Owners' homeowners' policy, Hermann purchased a personal umbrella policy from Cincinnati. The district court found that coverage under the umbrella policy was dependent on a finding of coverage under Auto-Owners' homeowners' policy. Because the district court determined that no coverage existed under the homeowners' policy, it concluded that no coverage existed under the personal umbrella policy. On appeal, Hermann argues that because the homeowners' policy provides coverage, the umbrella policy provides coverage as well. Apparently relying on their argument that the homeowners' policy does not provide coverage, Cincinnati's brief does not respond to this point of error. After reviewing the policy, we conclude that the umbrella policy also provides coverage.

The personal umbrella policy provides coverage for personal injuries "arising out of business or business property" if such injuries are covered by an underlying policy. The personal umbrella policy defines business as "[including] but not limited to a trade, occupation, profession or other activity engaged in as a means of livelihood or from which you or a relative intend to derive income (other than farming)." The record demonstrates that Hermann intended to derive income from the Dome venture. Furthermore, the underlying policy relevant to this umbrella policy, Auto-Owners' homeowners' policy, provides coverage. Thus, coverage exists under Cincinnati's personal umbrella policy. Accordingly, we reverse the district court's decision regarding the personal umbrella policy and remand for further proceedings.

III. Coverage Under Business Owner's and Commercial Umbrella Policies

Finally, we must determine whether the district court erred in concluding that Cincinnati owed no duty to defend and indemnify under the business owner and commercial umbrella policies issued to Hermann. The parties agree that Florida law governs our interpretation of these policies. Under Florida law, an insurance company's duty to defend depends upon the facts and legal theories alleged in the pleadings. The duty arises when the facts alleged "fairly and potentially bring the suit within policy coverage." Lime Tree Village Community Club Ass'n, Inc. v. State Farm Gen. Ins. Co., 980 F.2d 1402, 1405 (11th Cir. 1993)(applying Florida law). Any ambiguities in the policy must be construed in favor of the insured. Stuyvesint v. Butler, 314 So.2d 567 (Fla. 1975).

The district court assumed that the policies named Hermann in his individual capacity as an insured. The district court then analyzed the policy to determine whether Hermann's claim was covered. The district court found that the policy covered an individual's "business" only where such business is solely owned by the named individual. The court determined that because Hermann was not the sole owner of the oil and gas venture giving rise to the claims, the policies did not provide coverage.

On appeal, Hermann argues that the district court's conclusion that the business owners' and commercial excess policies provide no coverage is inconsistent with its finding that his oil and gas activities are "business" activities for purposes of the

11

homeowners' policy. The thrust of this argument appears to be that the homeowners' and business owners' policies are interrelated, in that if there is not coverage under one, there must be coverage under the other. Cincinnati argues that the district court correctly found no coverage because Hermann was not the sole owner of the oil and gas venture.[3]

The policies at issue provide coverage for an individual insured only "with respect to the conduct of a business of which [he or she is] the sole owner." Aplt. App. at 150 & 258. The record clearly shows that Hermann was not the sole owner of the Dome venture. The venture had numerous working interest owners to whom the persons operating the well were accountable. Indeed, when Hermann became unsatisfied with the operators, he was unable to replace them without support from the other owners. Thus, the district court correctly found that the business owners' and commercial umbrella policies provided no coverage.

IV.

In sum, we conclude that Hermann is entitled to coverage under the homeowners' policy issued by Auto-Owners and the personal umbrella policy issued by Cincinnati. Hermann is not entitled to coverage under the business owners' or commercial umbrella policies issued by Cincinnati. Accordingly, we AFFIRM in part, REVERSE in part and REMAND for further proceedings consistent with this opinion.

---

[3] Cincinnati further argues that Hermann was not named as an insured on the policies and, therefore, is not entitled to coverage. Because Hermann is not entitled to coverage even if he is a named insured, we need not reach this issue.

12