John L. ANGELOTTA,
Plaintiff-Appellant,

v.

AMERICAN BROADCASTING CORPO-
RATION; Geraldo Rivera; and
Barbara Walters, Defendants-Appellees.

No. 86-3399.

United States Court of Appeals,
Sixth Circuit.

Argued April 24, 1987.

Decided June 17, 1987.

Matthew P. Moriarty, argued, and Je-
rome S. Kalur, Jacobson, Maynard, Rusch-
man & Kalur Co., Cleveland, Ohio, for
plaintiff-appellant.

Terence J. Clark, argued, and Michael E.
Brittain, Calfee, Halter & Griswold, Cleve-
land, Ohio, for defendants-appellees.

Before MERRITT, WELLFORD and
NELSON, Circuit Judges.

WELLFORD, Circuit Judge.

This diversity case presents the sole is-
sue whether false light invasion of privacy
is a recognized tort in Ohio. The district
court found that it is not, and accordingly
dismissed the case on defendants' motion.
For the reasons that follow, we AFFIRM.

This action arises out of a September 27,
1984 broadcast of an ABC New "20/20"
televised investigative report entitled "To
Catch a Rapist." Defendant-appellee Ger-
aldo Rivera ("Rivera") was the correspon-
dent and defendant-appellee Barbara Wal-
ters ("Walters") was a participant in the
broadcast. The report focused on convict-
ed rapist Raymond Ferguson and detailed
allegations concerning Ferguson's lengthy
history of committing violent rapes and
avoiding meaningful punishment. As re-
ported in the broadcast, in 1984 Ferguson
was ultimately convicted by a jury in the
Court of Common Pleas for Cuyahoga
County, Ohio on one count of rape. The
judge presiding over the rape trial was
plaintiff-appellant John L. Angelotta.

During the investigation of "To Catch A
Rapist," Rivera interviewed, among others,
five of Ferguson's rape victims, law en-
forcement representatives, prosecution and
defense attorneys, members of the judi-
ciary, and the jurors who convicted Fergu-
son. The basic thrust of the broadcast was
that rape victims who seek to prosecute
their attackers often are again "victimized"
in court by a system that places the rape
victim's character and personal history on
trial while excluding evidence concerning
the rapist's criminal background and pro-
pensities.

Judge Angelotta was one of the mem-
bers of the judiciary who consented to be
interviewed by Rivera. In discussing rape
trials in general and his role as judge in the
most recent Ferguson trial, Judge Angelot-
ta made the following statements which
were broadcast by ABC:

JUDGE JOHN L. ANGELOTTA: A nice
girl who gets raped is different than a
bad girl who gets raped, a bad girl being

one who carries on this course of conduct with men. To me, she's a lot different than a good girl when you come to the question of rape—while agreeing that you may not rape either kind of girl. RIVERA: Do you believe that a bad girl doesn't have the same rights as a good girl, that a person who has had a sexual past doesn't have the same rights as a virgin?

JUDGE ANGELOTTA: Absolutely has precisely the same rights, but it goes to the credibility of the person, you see. The defendant says these things didn't happen, see? And I think if a nice girl says they did happen, a jury is more apt to believe that. If a bad girl says they did happen, perhaps her credibility is at issue and the jury might not believe her. Maybe she enticed the man.

At another point in the broadcast, Walters and Rivera stated:

BARBARA WALTERS: Geraldo, I find myself appalled watching this. Not just because of Raymond Ferguson, but the whole idea, this benign judge in Cleveland saying, "Ah, but if it's a good girl, we understand, but if it's a bad girl, if she slept with someone, she obviously wanted to be raped." I thought we were finished with that attitude. Haven't we progressed at all in the last 20 years? GERALDO RIVERA: I hope your anger is reflected in the millions of living rooms across the country right now, because that is the only thing that's going to change that attitude, that dinosaur attitude.

Following this broadcast, Judge Angelotta filed his complaint against defendant-appellees American Broadcasting Corporation ("ABC"), Rivera, and Walters. The claim that is the subject of this appeal[1] invoked section 652E of the Restatement of Torts

2d and charged that defendants' broadcast constituted an invasion of privacy by casting appellant in a false light.[2] Appellant alleged that he was falsely portrayed as a "macho trial judge who discriminated against women rape victims in favor of their assailants," and that this portrayal was offensive, and that it injured him and his reputation.

Defendants filed a motion to dismiss and/or strike the claim for false light invasion of privacy. The district court granted the motion, holding that under the rule announced by the Ohio Supreme Court in *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983), Ohio has not recognized a cause of action for false light invasion of privacy.

In this diversity case, we must apply state law "in accordance with the then controlling decision of the [state's] highest court." *E.g., United States v. Anderson County, Tennessee*, 761 F.2d 1169, 1173 (6th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 248, 88 L.Ed.2d 256 (1985). "If the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it." *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir.1985); *see also Mathis v. Eli Lilly & Co.*, 719 F.2d 134, 141 (6th Cir.1983); *Coleman v. Western Elec. Co.*, 671 F.2d 980, 983 (6th Cir.1982). According to the *Bailey* court, the "available data" to be considered if the highest court has not spoken include relevant dicta from the state supreme court, decisional law of appellate courts, restatements of law, law review commentaries, and the "majority rule" among other states. *Bailey*, 770 F.2d at 604.

The parties in this case dispute whether the Ohio Supreme Court has "spoken" on

1. The other claims were for defamation and intentional and/or negligent infliction of emotional distress. These claims were dismissed and are not involved in this appeal.

2. "False light" is a theory that emerged as a distinct branch of the invasion of privacy tort in an article by Dean Prosser in 1960. *See* Prosser, *Privacy,* 48 Calif.L.Rev. 383 (1960). Dean Prosser used the phrase "false light in the public

eye" to characterize invasion of privacy cases that did not fit into recognized categories of the tort. The false light doctrine has since been included in the Restatement of Torts definition of invasion of privacy, *see* 3 Restatement Second of Torts § 652. ("The right of privacy is invaded by ... publicity that unreasonably placed the other in a false light before the public.")

this issue. The district court found that the Ohio Supreme Court had indicated in *Yeager* that this tort is not recognized in Ohio.

In *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983), the appellant had asserted a cause of action under the false light doctrine. Addressing this claim the Ohio Supreme Court asserted:

> This court has recognized a cause of action for invasion of privacy in *Housh v. Peth* (1956), 165 Ohio St. 35, 133 N.E.2d 340 [59 O.O. 60]. However, this court has not recognized a cause of action for invasion of privacy under a "false light" theory of recovery. Under the facts of the instant case, we find no rationale which compels us to adopt the "false light" theory of recovery in Ohio at this time. As stated before, it is our view that the complained about language constitutes expressions of opinions, not facts. Even if appellant had styled his cause of action as an invasion of privacy alone, we find that the *Housh* syllabus does not support a theory of recovery such as this, under the facts of the case at bar.

*Id.* at 669–70 (footnote omitted). Appellant claims that the *Yeager* court did not expressly reject the false light doctrine, but merely declined expressly to adopt the theory on the facts in that case. He argues that the court thus left the question open and that we should look to other sources to determine whether the Ohio court would recognize a false light cause of action.

We find, however, that the Ohio Supreme Court has "spoken" and has thus far declined to adopt a false light cause of action. We note that cases decided in lower courts in Ohio after the *Yeager* decision have interpreted *Yeager* to mean that false light invasion of privacy has not been recognized to date in Ohio. *See, e.g., Wheeler v. Yocum & Dispatch Printing Co.*, No. 85A–828 (Ohio App., March 25, 1986) [Available on WESTLAW, OH–CS database]; *Rinehart v. Toledo Blade Co.*, 21 Ohio App.3d 274, 487 N.E.2d 920, 922–23 (Ohio App. 1985); *Killilea v. Sears, Roebuck & Co.*, No. 85AP–467 (Ohio App., Dec. 3, 1985)

[Available on WESTLAW, OH–CS database]; *Haynik v. Zimlich*, 30 Ohio Misc.2d 16, 498 N.E.2d 1095, 1099 (C.P., Cuyahoga County 1986); *Abde v. Cosmos Broadcasting Co.*, No. 83–3023 (C.P. Lucas County, Aug. 16, 1985); *Graewe v. WKYC–TV*, No. 68438 (C.P., Cuyahoga County, Oct. 11, 1984).

Appellant cites one post-*Yeager* case that seems to look favorably on the false light theory, *see Penwell v. Taft Broadcasting Co.*, 13 Ohio App.3d 382, 469 N.E.2d 1025, 1028–29 (1984), but the *Penwell* court relied on pre-*Yeager* cases that have been superceded by *Yeager*. The *Penwell* court, moreover, did not actually adopt the false light theory, finding that the facts did not support a false light cause of action. *Id.* at 1029. Appellant also has cited several pre-*Yeager* cases that mentioned the false light theory or seemed to approve of it. *See, e.g., Sustin v. Fee*, 69 Ohio St.2d 143, 431 N.E.2d 992, 993 n. 4 (1982); *Filotei v. Booth Broadcasting Co.*, No. 43454 (Ohio App.1981). *Yeager*, in declining to adopt the theory, casts substantial doubt on the authority relied upon. In *Sustin*, moreover, no false light issue was before the court; the court merely quoted in a footnote the Restatement of Torts and Dean Prosser's hornbook, which both include false light as a branch of invasion of privacy. *See* 431 N.E.2d at 993 n. 4. *See also Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St.2d 224, 351 N.E.2d 454 (1976) (court addressed only an appropriation claim; any mention of false light, which was not expressly adopted, was dictum), *rev'd*, 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977). In summary, appellant has cited no decision from the Ohio Supreme Court expressly adopting the false light cause of action, and any decision or dicta on this question from other Ohio courts was in our view superceded by *Yeager*.

Finally, appellant has cited and relies on a recent decision from the United States District Court for the Northern District of Ohio, *Morgan v. Hustler Magazine, Inc.*, 653 F.Supp. 711 (N.D.Ohio, 1987), in which that court asserted that Ohio courts would adopt the false light theory of invasion of

privacy if the appropriate case were before them. *Id.* at 719. We find this case unpersuasive. *Morgan's* discussion of false light was dicta and represents only a federal court's speculation of what Ohio courts might do. *Morgan* does not alter the fact that Ohio courts have yet to adopt this theory. We see no reason at all to suppose that the Ohio courts would "find [a] rationale which [would compel adoption of] the 'false light' theory of recovery" on the facts of the case before us.

The defendants may have taken a cheap shot at Judge Angelotta, but they had the right, under the law of Ohio and under the Constitution of the United States, to express their opinion of the "attitude" reflected in what they chose to believe the judge was saying. If the false light theory is ever adopted in Ohio, we doubt that it will be in this kind of case.[3]

In deciding whether Ohio recognizes this cause of action, we must be mindful of the proper role of federal courts in diversity cases: "Our respect for the role of the state courts as the principal expositors of state law counsels restraint by the federal court in announcing new state-law principles...." *Grubb v. W. A. Foote Memorial Hosp., Inc.*, 741 F.2d 1486, 1500 (6th Cir. 1984), *vacated on other grounds*, 759 F.2d 546 (1985), *cert. denied*, — U.S. —, 106 S.Ct. 342, 88 L.Ed.2d 289 (1985). This maxim compels our decision in this case, because the Ohio Supreme Court and recent lower courts in Ohio have expressly declined to adopt a false light cause of action. We decline the invitation to expand Ohio law in this case to encompass a previously unrecognized cause of action, and we accordingly AFFIRM the district court.

---

**3.** We have not discussed the anomaly involved in plaintiff's claiming that there has been a type of "invasion of privacy" tort committed by defendants in this situation where he voluntarily submitted to an interview by the television media.