**FEDERAL INSURANCE COMPANY, a New Jersey corporation, Plaintiff and Counter–Defendant,**

v.

**X–RITE, INC., a Michigan corporation, and Darrell Thompson, Individually and as an Officer and Director of X–Rite, Inc., Defendants and Counter-Plaintiffs,**

**X–RITE, INC., a Michigan corporation, and Darrell Thompson, individually, and as an Officer and Director of X–Rite, Inc., Defendants and Third–Party Plaintiffs,**

v.

**AMERICAN CASUALTY COMPANY OF READING, PA, a Pennsylvania corporation, Third–Party Defendant.**

No. 1:89–CV–470.

United States District Court, W.D. Michigan, S.D.

Sept. 24, 1990.

John R. Monnich, Troy, Mich., for plaintiff and counter-defendant.

Mark S. Allard and Charles M. Denton, Grand Rapids, Mich., for defendants and counter-plaintiffs.

Michael P. Tone, Chicago, Ill., for third party defendant.

## OPINION OF THE COURT

ROBERT HOLMES BELL, District Judge.

This case presents complementary actions for declaratory judgment concerning the parameters of an insurer's contractual duty to defend claims brought against the insured. Specifically, the fundamental questions posed may be stated as follows: Where the insurer assumes its contractual duty to defend but reserves its right to contest its liability to indemnify the insured for certain of the claims, such that a potential conflict of interest arises, who is ultimately entitled to choose counsel and control the litigation; and if the insured is entitled to do so, is the insurer liable to reimburse the insured for the reasonable costs of defense? With respect to these questions, there appears to be no genuine issue as to any material fact; the parties have filed cross-motions for summary judgment.

### I

Plaintiff Federal Insurance Company ("Federal") issued a comprehensive general liability insurance policy to defendant X–Rite, Inc., for the period June 22, 1984 to June 22, 1986. The policy includes the following covenant:

> The company will pay on behalf of the insured all sums which the insured shall become obligated to pay as damages by reason of liability to which this insurance applies, imposed by law or assumed by the insured under any incidental contract, for bodily injury, property damage or personal injury caused by an occurrence and *the company shall have the right and duty to defend any suit against the insured* seeking damages on account of such bodily injury, property damage or personal injury, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient.

(Emphasis added.)

In August 1987, an action naming X–Rite and its president and chief executive officer, Darrell Thompson, as defendants, was commenced in the Kent County (Michigan) Circuit Court. The complaint was filed by Robert O'Connor and Medical I.D. Systems, Inc., and contained eight counts precipitated by O'Connor's discharge from employment with X–Rite on May 10, 1985 and his subsequent efforts to compete with X–Rite:

   I—Wrongful Discharge

   II—Intentional Infliction of Emotional Distress

   III—Negligence

   IV—Malicious Prosecution

   V—Abuse of Process

   VI—Antitrust

   VII—Unfair Competition

VIII—Intentional Interference with Prospective Contractual Relations

The complaint was served on defendants X–Rite and Thompson on September 30, 1987, whereupon the firm representing X–Rite as corporate counsel, Varnum, Riddering, Schmidt & Howlett, undertook their representation in the "O'Connor litigation." Notice of the litigation and of the Varnum, Riddering firm's representation was given to Federal by letter dated December 4, 1987.

After several intermediate communications, Federal responded by letter dated February 17, 1988. The letter communicated (a) Federal's acknowledgement of its contractual duty to defend X–Rite and Thompson with respect to all claims asserted in the O'Connor litigation; (b) Federal's unwillingness to pay the fees of the Varnum, Riddering firm for continued representation; (c) the proposed substitution of the law firm Vandeveer, Garzia, Tonkin, Kerr & Heaphy as counsel; (d) acknowledgement of limited indemnification coverage for certain potential unintentionally caused damages under counts I, III and IV; and (e) Federal's reservation of rights to decline coverage for any damages not covered under the policy. X–Rite and Thompson did not, apparently, respond to this letter, but proceeded in defense of the O'Connor claims with Varnum, Riddering as counsel. From time to time thereafter, copies of miscellaneous documents reflecting progress in the litigation were forwarded to Federal by Varnum, Riddering.

On November 17, 1988, Federal mailed a letter to Thompson "insisting" that Federal by permitted to carry out its right and duty to defend and that the Vandeveer, Grazia firm be permitted to assume representation in the O'Connor litigation. By "status letter" of the same date, the Varnum, Riddering firm informed Federal that a mediation award of $125,000 for O'Connor had been returned and that the deadline for X–Rite's and Thompson's acceptance or rejection thereof was November 24th. The next material communication between the parties was a letter dated March 30, 1989, from Varnum, Riddering informing Federal that X–Rite and Thompson had accepted the mediation award of $125,000 and the O'Connor litigation had been settled for that amount. The letter demanded indemnification in this amount as well as reimbursement of attorney fees in the amount of $71,249.89.

Federal thereupon commenced this action for declaratory judgment. The complaint asks the Court to declare Federal free from all liability to X–Rite because X–Rite breached the insurance contract (a) be refusing to allow Federal to exercise its right and duty to defend; (b) by refusing to cooperate with Federal in the conduct of the litigation; and (c) by entering into the settlement and making payments without Federal's consent. X–Rite and Thompson filed a counter-claim asking the Court to declare Federal liable for the settlement amount as well as costs and attorney fees associated with the litigation. Also, X–Rite and Thompson filed a third-party claim against American Casualty Company of Reading, Pennsylvania, alleging it, too, is liable for the amounts in controversy under a directors' and officers' liability insurance policy. By agreement of the parties, the question of American Casualty's liability is held in abeyance pending adjudication of the present cross-motions for summary judgment concerning Federal's duty to defend.

II

Michigan law controls in this action, removed to this Court because of diversity of citizenship. Under Michigan law, an insurer has two options when it is asked to defend an action brought against its insured:

> It can undertake the defense with notice to the insured that it is reserving the right to challenge its liability on the policy. The second alternative for the insurer is to repudiate liability, refuse to defend and take its chances that there will be a showing that there is no coverage for the insured's liability.

*Detroit Edison Co. v. Michigan Mutual Ins. Co.*, 102 Mich.App. 136, 145, 301 N.W.2d 832 (1982). See also *Van Hollen-*

*beck v. Ins. Co. of North America*, 157 Mich.App. 470, 480, 403 N.W.2d 166 (1987) *lv. app. denied* 428 Mich. 903 (1987); *St. Paul Ins. Co. v. Bischoff*, 150 Mich.App. 609, 613, 389 N.W.2d 443 (1986). Here, Federal exercised the first option, said in *Detroit Edison, supra*, 102 Mich.App. at 145, 301 N.W.2d 832, to be the "best" option. Federal undertook to defend X–Rite and Thompson while giving notice of intent to reserve its rights to challenge its liability.

■ To ensure such a reservation of rights is effective, notice must be timely given. *Meirthew v. Last*, 376 Mich. 33, 38, 135 N.W.2d 353 (1965); *Multi–States Transport, Inc. v. Michigan Mutual Ins. Co.*, 154 Mich.App. 549, 553–54, 398 N.W.2d 462 (1986) *lv. app. denied* 428 Mich. 866 (1987). The potential conflict of interests is such that if the insurer has undertaken the defense without having given timely notice, it may be estopped to deny indemnification coverage, based upon a rebuttable presumption that the insured's defense would have been prejudiced. *Id.* Federal's notice, given approximately nine weeks after it learned of the action, was reasonably timely as a matter of law. *Fire Ins. Exchange v. Fox*, 167 Mich.App. 710, 714, 423 N.W.2d 325 (1988).

■ While Michigan law recognizes the potential conflict posed by an insurer's reservation of rights and requires timely notice thereof, it fails to delineate the insured's options upon receipt of such notice. If the insured, upon notice of the reservation of rights, is not content to proceed with the defense provided and controlled by the insurer, can it insist on provision by the insurer of independent counsel or retain counsel of its choice at the insurer's expense; or is it constrained to retain independent counsel at its own expense? Since the Michigan Supreme Court has not definitively spoken on this precise question, this Court must ascertain what the state law is from "all available data." *Angelotta v. American Broadcasting Corp.*, 820 F.2d 806, 807 (6th Cir.1987). "Available data" include "relevant dicta from the state supreme court, decisional law of appellate courts, restatements of law, law review commentaries, and the 'majority rule' among other states." *Id.*

Reviewing these sources, the Court finds relevant dicta in the opinion of Supreme Court Justice Patricia J. Boyle in *Allstate Ins. Co. v. Freeman*, 432 Mich. 656, 443 N.W.2d 734 (1989), an opinion in which four other justices concurred. Justice Boyle explained that *whether* an insurer has a duty to defend is a function of the insurance contract. 432 Mich. at 703, 443 N.W.2d 734. "In contrast," she wrote, "once a duty to defend is found, public policy comes to bear upon the exercise of the duty by the insured," citing the following passage from 14 Couch, *Insurance* 2d (rev. ed.), § 51.78, pp. 565–66:

> Under liability or indemnity policies in which the insurer assumes the duty of defending or settling suits or claims against the insured, this obligation is one requiring due care and a strict performance in utmost good faith. In such case, the insurer owes the duty to exercise reasonable care in conducting the defense, and is liable for damages resulting to the insured by reason of its negligence in performing such duty.

This passage, standing alone, reminds the Court, as it ascertains the parameters of Federal's duty to defend, that public policy requires an insurer to exercise the duty in utmost good faith or, in other words, "with utmost loyalty to its insured." *Meirthew, supra*, 376 Mich. at 38, 135 N.W.2d 353. The passage does not, however, stand alone in Justice Boyle's opinion. In a footnote to it, she quotes with approval the following language, which speaks directly to the present question:

> It has been held that the insured is not deprived of his contractual right to have a defense provided by the insurer when a conflict of interest between the two arises under the described circumstances, and it has been suggested that when such a conflict of interest arises, the insured must be informed of the nature of the conflict and given the right either to accept an independent attorney selected by the insurer or to select an attorney

himself to conduct his defense; if the insured elects to choose his own attorney, the insurer must assume the reasonable costs of the defense provided. [Annotation: *Construction and application of provision of liability insurance policy expressly excluding injuries intended or expected by insured*, 31 A.L.R. 4th 957, 976 (1984).]

In dicta, then, the Michigan Supreme Court has implicitly recognized the priority, in a conflict of interest situation, of the insured's interests. Little more can be gleaned with any certainty, however, than that Justice Boyle is open to permitting the insured to control the litigation, by either accepting the insurer's proposed independent counsel or, at the insured's option, selecting its own, at the insurer's expense.

A similar, but subtly different conclusion was reached in *American Home Assurance Co. v. Evans*, 589 F.Supp. 1276 (E.D. Mich.1984) *vacated on other grounds* 791 F.2d 61 (6th Cir.1986). There, Senior District Judge Charles W. Joiner recognized Michigan's aforementioned general rule and then extrapolated it:

> An insurer which contracts to indemnify for professional liability and which also contracts to provide defense is placed in a difficult position in a conflict case. It may choose not to defend, but the choice creates potential liability for breach of contract. On the other hand, it may choose to provide a defense with a reservation of rights. In the latter case the insurer's desire to control the litigation must give way to its obligation to defend the insured.... [T]he insurer should provide independent counsel to control the defense or allow the insured to hire his own counsel to be paid by the insurer.

589 F.Supp. at 1286.

Judge Joiner cited three reasons for the extrapolation. First, he acknowledged that when the insurer controls the litigation, defense counsel may be faced with a conflict of interest which creates a real danger that the insured will be prejudiced. Because specific instances of prejudice are difficult to prove after the fact, he conclud-

ed that a prophylactic rule was justified. Second, Judge Joiner found precedent for such a rule in two Michigan Supreme Court decisions which instituted other rules to protect the insured in situations where the interests of the insurer and the insured are in conflict. *Wakefield v. Globe Indemnity Co.*, 246 Mich. 645, 225 N.W. 643 (1929); *Denham v. Bedford*, 407 Mich. 517, 287 N.W.2d 168 (1980). Third, Judge Joiner cited two treatises which recommend, based on case law, either that the insurer provide independent counsel or that the insured by allowed to select counsel at the insurer's expense. 7C Appleman, *Insurance Law and Practice*, § 4685.01; A. Windt, *Insurance Claims and Disputes*, § 4.20 (McGraw–Hill 1982).

While Judge Joiner concluded the insured's interests should be protected, his ruling implicitly gave the *insurer* the option of providing independent counsel or permitting the insured to retain counsel of its choice. Herein lies the subtle difference between his ruling and the implication of Justice Boyle's dicta. Judge Joiner's *American Home Assurance* decision has been vacated for reasons immaterial. Still, his task of ascertaining Michigan law was identical to the task now before this Court and his reasoning is instructive.

In ascertaining which view, that reflected in Justice Boyle's dicta or that found in *American Home Assurance*, best reflects the current state of Michigan law, the Court is asked to consider the law of other states. There is widespread agreement in the case law that, where there is a conflict of interest, the insurer ought to retain independent counsel or pay for one chosen by the insured. Yet, there is little consensus as to who ultimately has the *right* to choose counsel where the insurer and insured cannot agree.

X–Rite emphasizes the decision of the California Court of Appeals in *San Diego Navy Federal Credit Union v. Cumis Ins. Society, Inc.*, 162 Cal.App.3d 358, 208 Cal. Rptr. 494 (1984):

> If the insured does not give an informed consent to continued representation [i.e., representation by counsel selected by the

insurer], counsel must cease to represent both. Moreover, in the absence of such consent, where there are divergent interests of the insured and the insurer brought about by the insurer's reservation of rights based on possible noncoverage under the insurance policy, the insurer must pay the reasonable cost for hiring independent counsel by the insured. The insurer may not compel the insured to surrender control of the litigation.

*Cumis* is representative of a growing body of case law which would give the insured an absolute right to choose counsel where a conflict exists. See e.g., *American Family Life Assurance Co. v. U.S. Fire Co.*, 885 F.2d 826, 831 (11th Cir.1989); *Previews, Inc. v. California Union Ins. Co.*, 640 F.2d 1026, 1028 (9th Cir.1981); *Golotrade Shipping & Chartering, Inc. v. Travelers Indemnity Co.*, 706 F.Supp. 214, 219 (S.D.N.Y.1989); *Northland Ins. Co. v. Heck's Service Co., Inc.*, 620 F.Supp. 107, 108 (D.C. Ark.1985); *Bryan v. State–Wide Ins. Co.*, 144 A.D.2d 325, 533 N.Y.S.2d 951 (1988); *Pepper Construction Co. v. Casualty Ins. Co.*, 145 Ill.App.3d 516, 99 Ill.Dec. 448, 495 N.E.2d 1183 (1986); *Maryland Casualty Co. v. Peppers*, 64 Ill.2d 187, 355 N.E.2d 24 (1976).

The *Cumis* approach is not exclusive, however. Many cases have, consistent with *American Home Assurance*, recognized a right in the insurer to determine whether to provide independent counsel of its choosing or to reimburse the insured for counsel of its choice. *Cay Divers, Inc. v. Raven*, 812 F.2d 866, 870 (3rd Cir.1987); *New York State Urban Development Corp. v. VSL Corp.*, 738 F.2d 61, 65–66 (2nd Cir.1984); *Howard v. Russell Stover Candies Inc.*, 649 F.2d 620, 625 (8th Cir. 1981); *U.S. Fidelity & Guaranty Co. v. Louis A. Rosen Co.*, 585 F.2d 932, 937–39 (8th Cir.1978); *American Motorists Ins. Co. v. Trane Co.*, 544 F.Supp. 669, 686 (W.D.Wisc.1982); *All–Star Ins. Corp. v. Steel Bar, Inc.*, 324 F.Supp. 160, 165 (N.D. Ind.1971); *L & S Roofing Supply Co. v. St. Paul Fire & Marine Ins. Co.*, 521 So.2d 1298, 1304 (Ala.1987); *Yeomans v. Allstate Ins. Co.*, 130 N.J.Super. 48, 324 A.2d 906 (1974).

Precedents from other jurisdictions thus offer little definitive guidance as to the direction Michigan law should be expected to take. Nonetheless, reviewing them thoroughly has led the Court to the settled conclusion that, under the facts of this case, X–Rite was not entitled to insist on counsel of its choice at Federal's expense. Several factors contribute to this conclusion.

Consider the facts. When Federal received notice of the action against X–Rite, it proceeded in accordance with black letter Michigan law by undertaking the defense with reservation of rights. Further, Federal tendered the representation of "independent counsel," the Vandeveer, Garzia firm.[1] X–Rite objected not because it believed Vandeveer, Garzia was not "independent," but because it questioned the qualifications of attorney William Heaphy of Vandeveer, Garzia to competently defend the wrongful discharge and anti-trust claims, and because it believed the conflict created by Federal's reservation of rights gave it the absolute right to retain counsel of its choice at Federal's expense. Ultimately, X–Rite did not pursue its question regarding attorney Heaphy's qualifications. X–Rite essentially ignored his proposed substitution as counsel, and proceeded in litigation with Varnum, Riddering as counsel. X–Rite thus acted upon a questionable interpretation of Michigan law without first having ascertained whether representation by Vandeveer Garzia would involve a substantial likelihood of prejudice to its interests.

---

**1.** "Independent counsel" is a term which has not been defined in the case law. The representation of Vandeveer Garzia was tendered to X–Rite with a clear explanation of the firm's role, designed to assure X–Rite of its independence. Specifically, Federal assured X–Rite that Vandeveer, Garzia would handle the defense of all claims asserted against X–Rite; that it would represent X–Rite only, not Federal, and would direct its efforts only to the best interests of X–Rite; and that it would not be involved directly or indirectly with coverage issues. These assurances are reasonable and, absent any contrary showing, effective to establish the firm's independence. See Windt, *supra*, § 4.20, p. 179.

X–Rite's conduct also evidences a cavalier disregard of the policy language. Under the policy, Federal assumed the "duty" to defend X–Rite, in order to protect X–Rite's interests. Conjunctively, however, Federal reserved the "right" to defend X–Rite, in order to protect its own interests. Unless "right to defend" is to be deemed mere surplusage, which has not been argued, it must be viewed as conferring upon Federal some prerogative with respect to the defense beyond simply paying expenses. This prerogative cannot, in a conflict of interest situation, include an absolute right to control the litigation. On the other hand, X–Rite's apparent presumption that the conflict of interest, posing a potential of prejudice to its interests, automatically and completely negated all prerogative, is not reasonable.[2]

The Court recognizes that "once a duty to defend is found, public policy comes to bear upon the exercise of the duty." Allstate, supra, 432 Mich. at 703, 443 N.W.2d 734. That is not to say, however, that the parties to an insurance contract can have no say in defining the scope of the duty— only that public policy comes to bear on it. Thus, an insurer's contractual reservation of the right to participate in selection of independent counsel as prerequisite to its obligation to pay for defense costs has been upheld. See New York State Urban Development Corp., supra, 738 F.2d at 65–66, where the court explicitly held the insurer's participation in selection of counsel does not automatically taint the independence of chosen counsel and is not contrary to public policy. Federal's "right to defend" in the present policy is not as clearly defined as the insurer's right in New York State Urban Development. Yet, "right to defend" can hardly be deemed to contemplate anything less than participation in selection of counsel, which contractual right ought to be enforced unless contrary to public policy.

Public policy requires the insurer to act with the utmost good faith. As long as this standard is observed, the Court may not interfere with the terms of the parties' agreement. To hold that the insurer who, under reservation of rights, participates in selection of counsel, automatically breaches its duty of good faith is to indulge the conclusive presumption that counsel is unable to fully represent its client, the insured,[3] without consciously or unconsciously compromising the insured's interests. The Court is unable to conclude that Michigan law professes so little confidence in the integrity of the bar of this state.

In American Home Assurance, Judge Joiner recognized that the insurer's control of the litigation posed such a danger of prejudice to the insured as to warrant a prophylactic rule. Construing Michigan law, he favored a prophylactic rule which requires the insurer to relinquish control of the litigation, but permits the insurer to select independent counsel. This rule is judicious, affording an adequate safeguard to the interests of both the insured and the insurer. It is also truest to the current state of Michigan law, reflecting a proper sense of judicial restraint. A broader prophylactic rule would represent an unwarranted incursion into an area of law more properly left for development by the Michigan courts or legislature. To the extent that some abuses may not be prevented by this rule, they are better remedied through

---

2. X–Rite's position might even be characterized as reckless in view of its promise in the policy to cooperate with Federal in the conduct of litigation and to not make any payment, assume any obligation or incur any expense other than for first aid, except at its own expense.

3. That the insured, not the insurer, is the client to whom counsel's sole loyalty is owed, is made abundantly clear in Atlanta International Ins. Co. v. Bell, 181 Mich.App. 272, 274–75, 448 N.W.2d 804 (1989):

No attorney-client relationship exists between an insurance company and the attorney repre-

senting the insurance company's insured..... Rather, an attorney's sole loyalty and duty is owed to the client alone, the client being the insured, not the insurance company.
....
The fact that an insurance company may directly pay the attorney fee rather than merely reimbursing its insured does not affect the nature of the attorney client relationship nor does it change the fact that the attorney represents the insured client and only owes a duty to that insured client.
(Citations omitted.)

an action against the insurer for breach of its duty of good faith or against counsel for malpractice.

Accordingly, the Court concludes, under the present facts, that the conflict of interest posed by Federal's reservation of rights did not automatically entitle X–Rite to select counsel of its choice at Federal's expense. There being no showing that Vandeveer, Garzia was not independent or that representation by Vandeveer, Garzia represented a breach of Federal's duty of good faith or resulted in an actual conflict or created a substantial risk of prejudice to X–Rite's interests, X–Rite was not justified in refusing the tendered representation of Vandeveer Garzia. In this respect, there is no genuine issue as to any material fact. Hence, X–Rite, cannot avoid its obligation under the policy to bear the expenses which it voluntarily incurred by retaining the services of Varnum Riddering. It follows that Federal is entitled to summary judgment as to this threshold issue.

### III

■ The parties' rights with respect to the costs of defense having thus been established, Federal asks the Court to further declare it released from liability to indemnify X–Rite and Thompson for the amount of the mediation award returned in the O'Connor litigation, $125,000, paid by X–Rite. Federal cites the following policy language:

> No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all terms of this insurance, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

Federal contends X–Rite failed to comply with several terms of the policy and is therefore barred from seeking indemnification. Specifically, Federal contends X–Rite did not give timely notice of the O'Connor litigation; did not permit counsel of Federal's choice to participate in the litigation;

did not keep Federal fully apprised of the litigation's progress; and did not obtain Federal's consent before accepting the mediation award in settlement of the action.

Under Michigan law, an insured's failure to comply with policy requirements is a defense excusing performance by the insurer only if the insurer can show it was prejudiced by its client's noncompliance. *Anderson v. Kemper Ins. Co.,* 128 Mich. App. 249, 253, 340 N.W.2d 87 (1983); *Burgess v. American Fidelity Fire Ins. Co.,* 107 Mich.App. 625, 628, 310 N.W.2d 23 (1981); *Bibb v. Dairyland Ins. Co.,* 44 Mich.App. 440, 444, 205 N.W.2d 495 (1973). Prejudice is a question of fact on which the insurer bears the burden of proof. *Anderson,* 128 Mich.App. at 253, 340 N.W.2d 87. It is a burden which Federal has failed to carry even to the extent of creating a genuine issue of material fact.

First the Court has already determined that X–Rite's notice to Federal of the O'Connor claims, coming nine weeks after the complaint was served, was not untimely. Second, there is no evidence to support the contention that Vandeveer, Garzia was not permitted to participate in the litigation. In fact, the parties' correspondence indicates that both X–Rite and Federal acknowledged the possibility of dual representation. Whether Vandeveer, Garzia could participate appears never to have been a central focus of the parties' dispute. Rather, the decisive question was whether Federal would also pay for Varnum, Riddering's services. Thus, it appears Vandeveer, Garzia had the opportunity to participate in the litigation, but chose not to.

Third, it is not disputed that Federal was not fully apprised of all progress in the O'Connor litigation. Yet, Federal did receive, through counsel, notice of depositions and other discovery matters and was aware that the action was proceeding toward trial. Federal's argument that it was "prevented" from receiving all pertinent pleadings and documents is not substantiated. There is no evidence that Federal made a single status inquiry or otherwise made any attempt to stay abreast of the

litigation's progress. Instead, it appears that Federal, upon learning that X–Rite decided to proceed with the representation of Varnum, Riddering, waited passively and silently for nine months before then reiterating its tender of Vandeveer, Garzia's services. The evidence submitted suggests that *if* Federal sustained any prejudice as a result of not having received all pertinent papers, it must bear the blame. Under Michigan law, Federal was bound to act to protect itself:

> Upon notice, there is some burden on the insurer to act to protect its interests or those of its insured. The insurance carrier will not be permitted to benefit by sitting idly by, knowing of the litigation, and watching its insured become prejudiced.

*Alyas v. Gillard,* 180 Mich.App. 154, 160, 446 N.W.2d 610 (1989). X–Rite's decision to proceed with Varnum, Riddering's representation did not automatically foreclose Vandeveer, Garzia's participation and certainly did not prevent Federal from keeping itself informed of the litigation's progress. Federal knew of the litigation and was aware of its potential liability to indemnify, yet waited passively. It cannot now be heard to complain that it was hindered in protecting its interests because X–Rite did not report every step of progress.

Similar reasoning applies to Federal's fourth assertion of prejudice. X–Rite did enter into a settlement of the litigation without Federal's consent and without expressly seeking Federal's consent. Yet, Federal was notified of the mediation award several days before the period for X–Rite's acceptance or rejection thereof elapsed. Federal remained silent. Neither party is to be commended for the regularity and clarity of communications in this matter. It is the insurer, however, under Michigan law, which has the heightened duty to act to protect its interests and those of its insured. Federal chose not to participate in the litigation and expressed no opinion regarding the reasonableness or acceptability of the settlement proposal represented by the mediation award. Moreover, Federal has not criticized Varnum Riddering's representation of X–Rite

in the litigation and has not even argued that the settlement amount, representing the assessment of three impartial mediators, and accepted by O'Connor and X–Rite, is unreasonable. Under these circumstances, the Court finds again that Federal has failed to carry it burden of showing prejudice.

Accordingly, the Court concludes there is no genuine issue of material fact and that Federal is not, by virtue of X–Rite's noncompliance with certain policy provisions, released from its contractual duty to indemnify X–Rite for any portions of the settlement amount attributable to injuries ultimately found to be covered under the policy, a determination which remains to be made.

An order consistent with this opinion shall issue forthwith.

## ORDER OF THE COURT

In accordance with the Court's written opinion issued on September 24, 1990,

IT IS HEREBY ORDERED that plaintiff Federal Insurance Company's motion for summary judgment is GRANTED in part and DENIED in part;

IT IS FURTHER ORDERED that plaintiff is awarded summary judgment with respect to its claim for a declaration that it is not liable for costs of defense incurred by X–Rite as a result of representation by the law firm of Varnum, Riddering, Schmidt & Howlett;

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is denied with respect to its claim for a declaration that it is released from indemnification liability.

CONJUNCTIVELY, IT IS HEREBY ORDERED that the motion of defendants X–Rite, Inc., and Darrell Thompson for summary judgment is GRANTED in part and DENIED in part;

IT IS FURTHER ORDERED that defendants are awarded summary judgment with respect to their counter-claim for a declaration that plaintiff is liable to indemnify them for any portions of the settle-

ment amount in the O'Connor litigation attributable to injuries which may ultimately be found to be covered under the subject comprehensive and general liability insurance policy issued by Federal;

IT IS FURTHER ORDERED that defendants' motion for summary judgment is denied with respect to their claim for a declaration that Federal is liable for the costs of defense paid by them to the law firm of Varnum, Riddering, Schmidt & Howlett in connection with the O'Connor litigation.