**UNION INSURANCE COMPANY, Plaintiff,**

v.

**THE KNIFE COMPANY, INC., Defendant.**

**Civ. No. 95–5039.**

United States District Court, W.D. Ark., Fayetteville Division.

Oct. 27, 1995.

---

Brian P. Boyce, Frye, Mickel & Boyce, Little Rock, AR, for plaintiff.

Matthew Horan, Attorney at Law, Fort Smith, AR, for defendant.

### MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

The court is currently considering a counterclaim in which the counterclaim plaintiff, The Knife Company, contends that its insurer, Union Insurance Company ("Union") must pay for counsel selected by The Knife Company to provide it with a defense in an action styled *Tennessee River Valley Knife Association, Inc. v. A.G. Russell, Inc.*, Case No. 1:94–CV–230 (E.D.Tenn.1994). Union agrees that it must provide The Knife Company with a defense, but contends that The Knife Company must be satisfied with the counsel selected by Union, so long as counsel selected is "independent."

The Knife Company's counterclaim also seeks a declaration that Union must indemnify it for any judgment suffered in the trademark action, whether the infringement is found to be willful or not. Union has stated its position in a reservation of rights letter that it has no obligation to indemnify for judgments of intentional infringement. Union contends that this counterclaim is premature as no judgment has yet been entered against The Knife Company.

Union has filed a motion for summary judgment which shall be denied in part and granted in part.

### I. SUMMARY JUDGMENT STANDARD

Rule 56(c) provides that summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there exists no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56.

In determining whether there are any genuine issues of material fact, the court must first give the nonmoving party "the benefit of the reasonable inferences that can be drawn from the underlying facts." *Fischer v. NWA, Inc.*, 883 F.2d 594, 598 (8th Cir.1989), *cert. denied*, 495 U.S. 947 (1990). The court may then grant the motion for summary judgment only "if the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### II. BACKGROUND

#### a. The underlying complaint

On June 21, 1994, The Knife Company was named as a defendant in an action for trademark infringement in the Eastern District of Tennessee in a suit styled *Tennessee River Valley Knife Association, Inc. v. A.G. Russell, Inc.*, Case No. 1:94–CV–230.

The following factual allegations are taken from the complaint. Since March 1991, Tennessee River Valley Knife Association has used the mark "MARBLES" for hunting, fishing and sporting knives which has been prominently displayed on the products themselves, their containers and their advertising. This mark was registered with the United States Patent and Trademark Office on January 4, 1994, covering use of the mark on knives and Class 8 hand tools.

The Knife Company has allegedly infringed on the "MARBLES" mark by selling

products under that name without permission, which is allegedly likely to cause confusion as to the source of the products. Since March 23, 1994, the Tennessee River Valley Knife Association has requested that The Knife Company cease and desist from the alleged trademark infringement, but The Knife Company has refused to do so.

Tennessee River Valley Knife Association has brought various federal law claims under the Lanham Act for false designation of origin and trademark infringement. It has also brought actions for common law trademark infringement and unfair competition.

The underlying complaint also alleges that the Knife Company intentionally infringed on the "MARBLES" trademark with the intent to cause confusion, mistake, and to deceive.

### b. Subsequent events

In August 1994, The Knife Company retained Boyd Cox of Fayetteville, an attorney with intellectual property experience. Mr. Cox hired the Tennessee law firm of Grant, Kovalincka, and Harrison to serve as local counsel in Tennessee.

On November 1, 1994, The Knife Company demanded a defense from its insurer, Union. On January 26, 1995, Union assumed defense of the action. However, Union refused to pay for the services of Mr. Cox, and instead retained David Zinn of Nashville, Tennessee. Union also reserved its right to refuse any further defense and instituted the present action claiming it had no duty to defend. Finally, it reserved the right to refuse coverage under the policy in case of judgment since there were allegations of intentional infringement which Union claims are uncovered.

On February 23, 1995, Mr. Zinn entered an appearance on behalf of The Knife Company. The firm of Grant, Kovalincka, and Harrison withdrew as local counsel and Mr. Zinn commenced to perform local counsel duties with the consent of all involved, who have apparently cooperated well together. In this way, The Knife Company has managed to avoid duplication of fees. Mr. Cox and Mr. Zinn have apparently worked well together, and Mr. Zinn has followed Mr. Cox's lead since Mr. Cox has a great deal more experience in intellectual property.

The Knife Company's concern with Mr. Zinn as independent counsel is as follows. Mr. Zinn is not a patent or trademark attorney and has very little experience with these matters. The Knife Company believes that it is customary for insurers to hire specialists for intellectual property litigation, and that the only reason Union did not do so in this case was because it expected a "quick out."

The Knife Company contends that an experienced trademark attorney is important, since it believes it has a good defense that the Tennessee plaintiff has only recently registered the trademark MARBLES and does not really own it. According to the Knife Company, the same mark has been used continuously for over 100 years by Marble's Arms Company of Gladstone, Michigan, which has granted it a license to use the mark. The Knife Company contends that the technical complexity of this case is witnessed by the fact that once Mr. Cox was retained, the Tennessee plaintiff took its inhouse counsel off the case and retained an attorney with greater experience in intellectual property.

On March 9, 1995, Union filed the present action in this court asking for a declaration that it owed no defense to The Knife Company, because the insurance contract did not cover actions for trademark infringement. Thus, another concern of the Knife Company was that, since Union reserved the right to refuse any further defense, and the Tennessee trial was set for July 6, 1995, there was at least a danger that Mr. Zinn would withdraw at a precipitous moment. This court found that Union had a duty to defend in an opinion and order dated September 1, 1995.

At present, Union still maintains that it has no duty to indemnify The Knife Company for any judgment for intentional infringement. Union bases its reservation on an exclusion for advertising injuries "arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." As there has been no judgment in the present action, it would be premature and perhaps unnecessary to rule on the coverage issue.

## III. INDEPENDENT COUNSEL IN CONFLICT OF INTEREST CASES

■ Union's reservation of rights puts Union and The Knife Company in a conflict of interest situation, because a finding of intentional infringement would be a potentially good thing for Union, but a bad thing for The Knife Company, while a finding of unintentional infringement would be good for The Knife Company and bad for Union. What to do in such situations has been addressed with some frequency by the courts.

When various causes of action are asserted against an insured, the insurance contract may provide coverage for some of the claims asserted, but not others. In such situations, the insurer will assume the duty to defend against the complaint, but it will reserve its right to deny coverage. As a result, the insurer will clearly benefit from a verdict on the uncovered claims.

Due to this conflict of interest, which exists in this case, the insurer must give up control of the litigation and retain an independent counsel for the insured. *See e.g. Howard v. Russell Stover Candies, Inc.,* 649 F.2d 620, 625 (8th Cir.1981). The question is whether, under the facts of the instant case, the insurer has the right to name the independent counsel, or whether the insured has the right to name independent counsel of its own choosing. Arkansas case law does not address or answer this question, and therefore:

> this Court must ascertain what the state law is from "all available data." *Angelotta v. American Broadcasting Corp.,* 820 F.2d 806, 807 (6th Cir.1987).
>
> "Available data" include "relevant dicta from the state supreme court, decisional law of appellate courts, restatements of law, law review commentaries, and the 'majority rule' among other states." *Id.*

*Federal Ins. Co. v. X–Rite, Inc.,* 748 F.Supp. 1223, 1226 (W.D.Mich.1990).

In determining the majority rule, this court will first consider the holdings of the Eighth Circuit. Most recently, in *Howard v. Russell Stover Candies, Inc.,* 649 F.2d 620 (8th Cir.1981), the court of appeals considered a conflicts situation where the insured

was sued for both willful and non-willful violation of the Missouri service letter statute. The insurer denied having a duty to defend since no coverage existed for willful violations of the service letter statute.

The Eighth Circuit's main holding was that the insurer had a duty to defend the insured because a judgment covered under the policy was possible. However, the court went on to hold that, due to the presence of a conflicts situation, Missouri law requires that the insurer " 'must either provide an independent attorney to represent the insured or pay the costs incurred by the insured in hiring counsel of its own choice.' " *Id.* at 625 (quoting *U.S. Fidelity & Guaranty Co. v. Louis A. Roser Co.,* 585 F.2d 932, 938 n. 5 (8th Cir. 1978)). Union argues that the plain language of this quote provides it with the choice of providing independent counsel or paying for The Knife Company to choose its own.

The court believes that the quote is ambiguous and does not indicate who gets to choose counsel. First, the issue of who gets to choose was not apparently before the court and was not what the court was trying to decide. The quote was a brief concluding remark, without the benefit of any analysis, and apparently without the benefit of arguments by the parties. Second, the court's sole authority for its view of Missouri law was *Roser, supra,* an Eighth Circuit decision interpreting the law of Utah and Minnesota.

In *Roser,* the Eighth Circuit was considering a situation where the insured was being sued for negligence and strict product liability. The insurer assumed the duty to defend but reserved the right to deny coverage as to the product defect claim. The insurer invited the insured to retain its own counsel to defend the product defect claim, which the insured did and then sought reimbursement.

The Eighth Circuit granted reimbursement of attorney's fees. The court held that, in a conflict situation under Utah and Minnesota law, the insurer "must either provide an independent attorney to represent the insured or pay the costs incurred by the insured in hiring counsel of its own choice." *Roser,* 585 F.2d at 938 n. 5. Again, this language seems to indicate that the insurer may either select independent counsel of its

own choosing or pay for counsel chosen by the insured, but two factors militate against this reading. First, under the facts of that case, the insured had already exercised the right to choose and was not challenged in its exercise of this right. Second, the court commented that such conflicts of interest were "egregious" and made strong statements that a counsel selected by the insurer could never be expected to be unconflicted, even quoting the Bible.

Even the most optimistic view of human nature requires us to realize that an attorney employed by an insurance company will slant his efforts, perhaps unconsciously, in the interests of his real client—the one who is paying his fee and from whom he hopes to receive future business—the insurance company.

Although it has perhaps become trite, the biblical injunction found in Matthew 6:24 retains a particular relevancy in circumstances such as these, "No man can serve two masters...."

*Id.* at 938 n. 5. Third, the Eighth Circuit pointed to a line precedent establishing its holding as the majority rule, and many of these cases support the insured's right to choose.

This court's view of *Roser* is supported by a district court case out of the Eastern District of Arkansas, *Northland Ins. Co. v. Heck's Serv. Co., Inc.,* 620 F.Supp. 107 (E.D.Ark.1985) (J. Woods). *Northland,* unlike the previous cases discussed, directly decided that, *under Arkansas law,* the insured "must be allowed to select its own legal counsel" reasoning that "there would be an inherent conflict of interest in any attorney selected" by the insurer. *Id.* at 108. The court cited *Roser, supra,* for its view of the law.

The law of various states, which appears to be the "majority rule" also supports giving the choice of counsel to the insured in a conflict situation. *See e.g. American Family Life Assur. Co. v. U.S. Fire Co.,* 885 F.2d 826, 831–32 (11th Cir.1989) ("insured has the right to refuse to accept an offer of the counsel appointed by the insurer") (Georgia law); *Previews, Inc. v. California Union Ins. Co.,* 640 F.2d 1026, 1028 (9th Cir.1981) ("obli-

gation to defend extends to paying the reasonable value of the legal services and costs performed by independent counsel selected by insured") (California law); *Golotrade Shipping & Chartering, Inc. v. Travelers Indem. Co.,* 706 F.Supp. 214, 219 (S.D.N.Y. 1989) (counsel "is to be paid by the insurer, but ... appointed by insured") (New York law).

Union relies heavily on *Federal Ins. Co. v. X–Rite, Inc.,* 748 F.Supp. 1223, 1228 (W.D.Mich.1990), which concluded that *"under the facts of this case,* X–Rite was not entitled to insist on counsel of its choice." (emphasis supplied). The court also justified its ruling by the express injunction of "Consider the facts." It then followed up with an extensive discussion of those facts, which is not the opinion of a court announcing a per se rule that the insurer always gets to choose. The *X–Rite* court also acknowledged that there is "a growing body of case law which would give an insured the absolute right to choose counsel where a conflict exists." *Id.* at 1228.

There is more precedent that can be discussed, but it does not alter the court's basic conclusion that summary judgment for Union is not appropriate. The authority favoring The Knife Company is clearly in its favor. The authority cited by Union is for the most part equivocal.

Even looking more closely at the facts of this case, the court does not alter its conclusion. There is no irresponsible conduct by the insured. The fact that The Knife Company does not point to any incompetent or unethical conduct by Mr. Zinn is not particularly relevant, nor is Union's rather cavalier suggestion that The Knife Company can always sue Mr. Zinn for malpractice if he does engage in misconduct or commit malpractice. Finally, it is not particularly relevant that Mr. Zinn has been instructed that he represents The Knife Company and only The Knife Company. As the Eighth Circuit has noted, the conflict situation cannot be eliminated so long as the insurance company selects the counsel. It is simply a matter of human nature.

### IV. CONCLUSION

For the above reasons, the court will deny Union's motion for summary judgment as to its right to select independent counsel. It does not seem wise to retain Mr. Zinn as sole counsel and there is more than a fair chance that Union would ultimately have to pay for any mistakes made, at least with regard to monetary damages. The rest of the burden would fall on the insured which is not acceptable.

■ The court will grant Union's motion for summary judgment on The Knife Company's request for a pre-judgment declaration of coverage in the Tennessee suit. Union argues that there has been no judgment rendered in the Tennessee suit so that there is no mature claim for indemnification or for covered losses under the insurance contract. This argument has not been contested by The Knife Company, and the court is unable to find any precedent on the matter supporting a pre-loss declaration, so summary judgment will be granted on this part of the motion.

The court will grant Union's motion in part and deny it in part in a separate order entered concurrently with this memorandum opinion.